UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Bruce J. Wisotsky**
**NORRIS, McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206 North
Bridgewater, New Jersey 08807
(908) 722-0700; (908) 722-0755 (fax)
Attorneys for Steven Mitnick, Assignee for the
Benefit of Creditors of G&Y Realty, LLC

Honorable Rosemary Gambardella

**In Re:**

**G&Y REALTY, LLC,**

                        **Debtor.**

Chapter 11

Case No.14-16010 (RG)

**CERTIFICATION OF STEVEN MITNICK, ASSIGNEE, IN SUPPORT OF MOTION
FOR THE ENTRY OF AN ORDER (A) DISMISSING INVOLUNTARY PETITION
PURSUANT TO 11 U.S.C. SECTIONS 305 AND 707 OF THE BANKRUPTCY CODE;
AND (B) IMPOSING SANCTIONS AGAINST PETITIONERS PURSUANT TO 11 U.S.C.
SECTION 303 (i)**

Steven Mitnick, Assignee, hereby certifies as follows:

1.      I am the duly qualified and acting Assignee for the Benefit of Creditors of G & Y

Realty, LLC, a New Jersey limited liability company ("G and Y" or "Assignor").

2.      I make this Certification in support of my request for the entry an order

dismissing this case and imposing sanctions against Petitioners.

3.      The facts set forth hereinafter are true and correct based upon personal knowledge

or information, unless otherwise stated.

4.      I am a member of the Bar of the State of New Jersey and a principal in the law

firm of Mitnick and Malzberg, PC, with offices located at 29 Race St., Frenchtown, NJ 08825.  I

have been engaged in the practice of bankruptcy and commercial law generally for over thirty (30) years and regularly appear before this Court, other Federal courts and state courts.

5.      A substantial portion of my professional time is expended in serving as assignee in assignment for the benefit of creditors ("ABC") proceedings before the Superior Court of New Jersey. Over the past thirty (30) years I have served as assignee in over one hundred ABC proceedings.

**THE ASSIGNMENT CASE**

6.      On January 27, 2014 (the "Assignment Date"), G and Y executed and delivered to me a Deed of Assignment for the Benefit of Creditors.  The Deed was recorded with the Register of Hudson County and filed with the Surrogate of Hudson County under Docket No. 308205, thereby commencing formal liquidation proceedings ("Assignment Proceedings") under the jurisdiction of the New Jersey Superior Court pursuant to N.J.S.A. 2A:19-1, et seq. and New Jersey Court Rule 4:54.

7.      The Assignment Proceedings are pending in the Superior Court of New Jersey, Hudson County.  The Honorable Lourdes Santiago, JSC, has been presiding over the matter for several months, has familiarity with the issues in the Assignment Proceedings and has already ruled on significant disputed matters which have arisen in the case.

8.      In accordance with my duties and responsibilities as Assignee, I undertook an investigation into the Assignor's past business operations. To assist me in the investigation I retained necessary professionals inclusive of (a) Executive Sounding Board Associates, as financial advisors; Auction Advisors, Inc., as  auctioneer; and Norris, McLaughlin and Marcus, P.A. as counsel. My professionals and I have expended substantial time and effort to familiarize ourselves with relevant issues in the Assignment Proceedings.

2

9.    My efforts to date have entailed moving to liquidate all assets of the estate as expeditiously and prudently as possible and investigating causes of action belonging to the estate, inclusive of, but not limited to, fraudulent conveyances and preferential transfers.

10.    Since execution of the Deed of Assignment, my professionals, staff and I have collectively expended hundreds of hours in connection with efforts to effectuate sales of assets of the assignment estate and to void a substantial preferential transfer made to a large creditor of the estate, which efforts are set forth in more detail below.

**G & Y CONVEYS ITS MOST VALUABLE ASSETS TO SABIR**

11.    My investigation revealed that, prior to January 15, 2014 (the "Transfer Date"), the Assignor operated gasoline service stations under the "Delta" brand name at various leased locations in northern New Jersey.  At one time, the Assignor operated approximately twenty-eight (28) such stations. As of the Assignment Date, all locations had either been closed or transferred.

12.    Sabir, Inc. (hereinafter "Sabir") one of the principal suppliers of petroleum and related products utilized by the Assignor in the operation of its business.

13.    Upon information and belief, prior to the Transfer Date, Sabir asserted a claim against Assignor for payment of sums Sabir claimed were due and owing by Assignor to Sabir.

14.    On January 15, 2014 (the "Transfer Date"), twelve (12) days prior to the conveyance of the Deed of Assignment, the Assignor and Sabir entered into an agreement styled as an "Operating Agreement," (hereinafter referred to as the "Transfer Agreement"), a copy of which is annexed hereto and incorporated herein as Exhibit "A." It is my understanding that the assets subject to the Transfer Agreement constituted G & Y's most valuable assets.

3

15.     The Transfer Agreement provided that, in exchange for Sabir's forbearance in pursuing payment of its claim against Assignor, Assignor transferred complete control of eight (8) of its gasoline service stations to Sabir. A review of the Transfer Agreement reveals that despite its title, it constituted an outright transfer of all of the Assignor's interests in the stations to Sabir.

16.     Upon execution of the Transfer Agreement, Sabir took control of the eight (8) gasoline service stations and has collected all revenues generated from their operations. Despite demand, it has failed and refused to provide me with an accounting of cash receipts and disbursements generated from its operations nor of payments made by the Assignor to Sabir prior to the Transfer Date.

17.     The assignment estate currently consists of eighteen (18) leasehold interests for gasoline service stations, inclusive of the eight (8) stations subject to the Transfer Agreement, which are wrongfully in Sabir's possession.

**ACTION TO VOID THE TRANSFER AGREEMENT WITH SABIR**

18.     As the conveyance evidenced by and resulting from the Transfer Agreement was clearly void or voidable as a preferential transfer and/or fraudulent conveyance under applicable state law, I commenced an action before the Superior Court to void the conveyance. True and correct copies of the filed Complaint and Certification in Support of Entry of an Order to Show (the "Avoidance Pleadings") are attached hereto and incorporated herein collectively as Exhibit "B."

19.     Sabir retained the law firm of Broege, Neumann, Fischer & Shaver, LLC, to represent its interests in the law suit, which firm filed opposition to the Complaint, a copy of

4

which is attached hereto and incorporated herein as Exhibit "C." The Answer contains, primarily, general denials to the allegations in the Complaint.

20.    I thereafter engaged in negotiations with counsel for Sabir in an effort to (a) obtain consent to an avoidance of the transfer; (b) enter into an interim operating agreement with Sabir, pending sales of the station, and (c) solicit offers to purchase the stations. These negotiations were unsuccessful.

21.    On March 8, 2014, the Superior Court entered an Order to Show Cause as to why the transfer evidenced by the Transfer Agreement should not be voided, returnable on March 20, 2014. A true and correct copy of the Order to Show Cause is attached hereto and incorporated herein as Exhibit "D." The Court conducted a hearing on the Order to Show Cause on its return date, at which time Sabir's counsel and my counsel argued their respective positions as to the avoidance of the Transfer Agreement.

22.    After argument, and noting that the transfer of the eight (8) gasoline service stations occurred only twelve (12) days prior to the execution of the Deed of Assignment in exchange for Sabir's agreement to forbear on collecting a past due debt, Judge Santiago, by Bench Order, voided the transfer. The Bench Order vested the assignment estate with ownership of the leasehold interests which were subject to the Transfer Agreement. Notwithstanding, Sabir continues to operate the stations without any claim of right.

23.    My counsel thereafter submitted to the Court, on notice to Sabir's counsel, a proposed Order memorializing the Bench Order, which was unopposed by Sabir. A true and correct copy of the proposed Order is attached hereto and incorporated herein as Exhibit "E."

24.    Sabir did not file a motion for reconsideration or appeal of Judge Santiago's Bench Order.

## AUCTION SALE OF ESTATE ASSETS

25.     There are very little cash assets in the assignment estate available to fund rental payments and other accruing expenses under the leases for the gasoline service station properties. Accordingly, the assignment estate ran the risk of forfeiture of its interest in the leases as a result the estate's inability to make required payments to the landlords. Therefore, it was necessary for me to expeditiously move to sell the leasehold interests to preserve value for the benefit of creditors.

26.     In light of my time constraints in effectuating sales, on February 19, 2014, I caused to be noticed a public auction sale of the estate's interest in the leased locations. Attached hereto and incorporated herein as Exhibit "F" is a copy of the Notice Sealed Bid Auction Sale Leasehold Interests and Other Assets circulated in this matter, which scheduled an auction of the assignment estate's assets to be conducted on March 12, 2014, with a hearing to approve sales to be conducted on March 20, 2014.

27.     In order to publicize the availability of the leases and other assets, Auction Advisors made a gargantuan effort in a short time period to market the properties. Their efforts included print advertising, internet advertising, social media promotion, telemarketing, direct mailing, and signage.  In addition, they utilized a proprietary database comprised of over forty-five thousand (45,000) gas station operators and potential acquirers in order to promote the sale.

28.     The marketing efforts generated enormous interest, resulting in four hundred twenty eight (428) inquiries, and sixty (60) bids for seventeen (17) of the eighteen (18) gas stations totaling in excess of one million three hundred thousand dollars ($1,300,000.00) A true and correct copy of a schedule of the bids for which approval was sought is annexed hereto and incorporated herein as Exhibit "G."

6

29.     While my efforts generated tremendous interest in the estate assets, they also resulted in substantial opposition to the sales, primarily from landlords of the station properties, who no doubt wished to reap the benefits of the leasehold sale proceeds themselves.    Many landlords filed objections to the sales and some commenced/continued actions to take possession of the premises subject to their respective leases. Among the parties objecting to the sales were SN Walz, LLC ("Walz") and Samia Vento, LLC ("Samia"), landlords of leased locations in Paramus, NJ and Garfield, NJ, whose objections are attached hereto and incorporated herein jointly as Exhibit "H." Significantly, the premises subject to the leases with Walz and Samia are subject to the Operating Agreement between Sabir and the Assignor which Sabir continues to operate in violation of Judge Santiago's Bench Order.

30.     On March 20, 2014, the Superior Court also conducted a hearing to consider my proposed sales of the leasehold interests and other assets. In attendance at the hearing were counsel for Sabir, numerous landlords and other creditors, my auctioneer, financial adviser, counsel and staff. I was prepared to present extensive testimony to support the sales and to refute the contentions raised in more than a dozen objections to the sale.   However, in light of the fact that I believed many of the objections could be resolved via negotiations; I requested a short adjournment of the hearing to enable me to attempt to amicably resolve the objections. Accordingly, the hearing was adjourned, without opposition, until March 28, 2014 at 4:00 PM. In order to protect against the dissipation of estate assets by the institution or continuance of landlord dispossess actions, Judge Santiago also enjoined such actions until the rescheduled hearing date.

31.     During the week commencing March 23, 2014, through the scheduled hearing date of March 28, 2014, my staff, and retained professionals expended countless hours

negotiating with landlords and bidders in an effort to obtain consent to the sales. We provided financial and experiential information regarding the bidders, arranged meetings between the bidders and the landlords, modified proposed sale terms to address individual concerns, and also offered the landlords a portion of the sale proceeds in exchange for their consent to the sales.

32.    Our efforts during the week proved hugely successful. We planned on seeking approval of sales of seventeen (17) leasehold interests. As of the hearing date, we had obtained landlord consent to seven (7) of the sales, which would have yielded gross proceeds of nearly four hundred thousand dollars ($400,000.00).  Proposed sales of two (2) other leasehold interests, which were unopposed, would have yielded an additional one hundred sixty thousand dollars ($160,000.00).  We continued to negotiate with several other landlords and intended to seek approval of sales over the objections of five (5) landlords.

33.    On March 29, 2014, at approximately 3:30 PM, my professionals and I arrived at the Superior Court in Jersey City, New Jersey, ready to proceed with the hearing on approval of sales, which was scheduled to commence before Judge Santiago at 4:00 PM. At approximately 3:59, ONE MINUTE BEFORE THE HEARING WAS SCHEDULED TO COMMENCE and more than a week after Judge Santiago ruled adversely to Sabir's interests in my avoidance action, I received an email from Sabir's counsel that an Involuntary Petition had been filed against the Assignor NINE MINUTES earlier. A true and correct copy of counsel's email with documentation of filing is annexed hereto and incorporated herein as Exhibit "I." Despite the fact that I had engaged in ongoing negotiations with Sabir's counsel over a period of several weeks, which ended as of the date of the sale hearing before Judge Santiago, I received no prior notice that Sabir intended to file the involuntary case.

34.    As the involuntary bankruptcy filing and the automatic stay resulting therefrom might impact upon the ability of the Superior Court to approve the sales, the Superior Court could not proceed with the sale hearing.

35.    Solely as a result of the initiation of this case, I run the risk that the buyers of the leasehold interests will withdraw their purchase offers. Even should the buyers proceed, the assignment estate has and continues to sustain damages resulting from the accrual of rent and other charges while sales are (at best) delayed, which will reduce the funds available from the sales to pay creditor claims.

**THE INVOLUNTARY CASE**

36.    The Petitioners herein are Sabir, which wrongfully continues to lease operate stations which constitute property of either the assignment estate or the bankruptcy estate, plus Walz and Sania, both of whom are landlords of stations being operated by Sabir and who objected to the sales of the assignment estate's leasehold interests.

37.    In what can only be described as the most blatant display of "forum shopping" and bad faith imaginable, Sabir, aggrieved by the decision of Judge Santiago to void the conveyance evidenced by the Transfer Agreement, has apparently decided to take a "second shot" at achieving a favorable result.

38.    Further, an investigation conducted by Executive Sounding Board Associates, my financial advisors, has revealed that, over the past year, the Assignor transferred to Sabir an amount in excess of seventy-nine million dollars ($79,000.000.00), that certain checks representing the transfers did not clear the Assignor's bank, and that Sabir asserts a claim against the Assignor in an amount in excess of four million dollars ($4,000,000).

39.    While Sabir has refused to provide me with documentation of payments and corresponding invoices from Sabir to the Assignor, it may well be that a substantial amount of the payments tendered by the Assignor to Sabir were preferential and avoidable under New Jersey law.  Based upon limited records supplied to me to date, the Assignor made payments (net of "bounced checks") to Sabir totaling eighteen million nine hundred forty three thousand four hundred fifty two dollars and seventy cents ($18,943,452.70) within the four (4) month period prior to the conveyance of the Deed of Assignment, which may be voidable under applicable under New Jersey law (*See* N.J.S.A. 2A:19-3).  By contrast, not a penny was tendered by the Assignor to Sabir within three (3) months prior to the filing date of the involuntary Petition, by reason of the fact that during most (if not all) of this time period, the Assignor did not operate its business.  Thus, should this Court allow the bankruptcy case to proceed, it will have effectively insulated Sabir from any exposure with respect to the recovery of preferential transfers made thereto.

40.    One is hard pressed to imagine a greater abuse of the provisions of the Bankruptcy Code then to permit this bad faith filing to proceed, thereby providing Sabir with financial protection at the expense of other creditors holding valid claims and who did not resort to such bad faith tactics.

41.    Regardless of the Petitioners' intentions, the involuntary filing, in addition to frustrating my substantial efforts to sell the assignment estate's assets at the highest possible prices, has resulted in damages to the assignment estate which may well run into the hundreds of thousands of dollars.

42.    While the involuntary filing may or not be in the individual interests of Sabir and its landlord "cohorts," it clearly runs contrary to the best interests of the creditor body as a

whole, who have already been damaged as a result of the involuntary petition filing and my consequential inability to facilitate sales.

43.    Accordingly, I request that the involuntary proceeding be dismissed as a "bad faith" filing and that sanctions be imposed as a result of the filing of the involuntary Petition..

I hereby certify that the foregoing is true and correct under penalty of perjury.

_____
STEVEN MITNICK, Assignee

Dated: April 2, 2014

11

# EXHIBIT "A"

## OPERATING AGREEMENT

It is hereby acknowledged and agreed by and between G & Y Realty, L.L.C, a New Jersey Limited Liability Company, Guy Madmon, Managing Member, having a business address of 9101 Kennedy Boulevard, North Bergen, New Jersey collectively and individually hereinafter referred to as the Debtor & Baris Alkoc & Sabir, Inc. a New Jersey Corporation having a business address of 252 Braodway, Long Branch, New Jersey collectively and individually hereinafter referred to as the Creditor as follows:

1. Creditor has been supplier of petroleum, petroleum products and gasoline service station materials to Debtor for a significant period of time. Due to various business difficulties experienced by the Debtor as well as differences between Debtor and some of it's banking contacts, Debtor is currently arrears in its payment to Creditor in an amount exceeding four million dollars.

2. Debtor has been engaged in negotiations with its bank in order to bring about transfers of some of its funds and is optimistic that it will be able to complete those transfers within a reasonable time. Debtor agrees that when it obtains access to said sums, the first priority for payment will be to Creditor in the amount of two million dollars.

3. Creditor will forbear from initiating any debt enforcement against Debtor upon terms and conditions hereinafter set out.

4. Debtor represents that it has leases which are in good standing to multiple gasoline service station properties. Those leases are referred to in Schedule A attached and made part hereof. Creditor and Debtor agree that Debtor will and hereby does authorize Creditor to exercise all of its rights under said leases and shall have the right to all revenues from the locations and will be responsible for all payments to the landlord and others as may be required under each of the leases from this date of signing this agreement forward. Creditor will also be responsible for all expenses including employee wages during its operating of said facilities.

5. Each signatory to this agreement is jointly and severally liable for fulfilling all of the obligations contained herein. Each signatory has had an opportunity to review this Agreement with his or its attorney and represents that he or it understands and agrees to be bound by its terms.

In Witness Whereof the parties have set their hands and seals this
*15th* day of January 2014.


G & Y Realty, L.L.C.                          Sabir, Inc.


By: _____                 By: _____

Guy Madmon, Managing Member                  Baris Alkoc, President



_____                      _____
Witness                                      Witness

        SUSAN PULEO
     Notary Public of New Jersey
   My Commission Expires April 30, 2014

# EXHIBIT "B"

**NORRIS McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700
Attorneys for Plaintiff, Steven Mitnick, Assignee

FEB 2 8 2014

SUPERIOR COURT
CHANCERY DIVISION
PROBATE PART
HUDSON COUNTY

|  |  |
|---|---|
| **STEVEN MITNICK, Assignee for the Benefit of Creditors of G & Y Realty, LLC,** | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION, PROBATE PART: HUDSON COUNTY |
| Plaintiff, | DOCKET NO. 308205 |
| vs. | Civil Action |
| **BARIS, ALKOC & SABIR, INC., a New Jersey Corporation,** | **VERIFIED COMPLAINT** |
| Defendant. | |

Steven Mitnick, Assignee for the Benefit of Creditors of G & Y Realty, LLC ("Plaintiff"), by and through his counsel, Norris, McLaughlin & Marcus, P.A., by way of Complaint against Baris, Alkoc & Sabir, Inc. ("Defendant"), alleges as follows:

## PARTIES

1.     Plaintiff is the duly qualified and acting Assignee for the Benefit of Creditors of G & Y Realty, LLC, a New Jersey limited liability company ("Assignor"). Plaintiff maintains a business address of c/o Mitnick & Malzberg, P.C., 29 Race St., Frenchtown, NJ 08825.

2.     Defendant is a New Jersey corporation which maintains a business address at 252 Broadway, Long Branch, NJ 07740.

1216464_1

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

3.      On February 9, 2014 ( the "Assignment Date"), Assignor executed and delivered to Plaintiff a Deed of Assignment for the Benefit of Creditors. The Deed was recorded with the Register of Hudson County and filed with the Surrogate of Hudson County under Docket No. 308205, thereby commencing formal liquidation proceedings ("Assignment Proceedings") under the jurisdiction of the New Jersey Superior Court pursuant to N.J.S.A. 2A:19-1, et seq. and New Jersey Court Rule 4:54.

4.      Plaintiff, as Assignee, is vested with all right, title and interest in Assignor's assets for the benefit of Assignor's creditors.

5.      Prior to January 15, 2014 (the "Transfer Date"), Assignor operated eighteen (18) gasoline service stations under the "Delta" brand name at various leased locations in northern New Jersey.

6.      Upon information and belief, prior to the Transfer Date, Defendant commenced suit against Assignor to recover sums claimed owed for petroleum and other products sold to Assignor for use in its gasoline service stations.

7.      As of the Transfer Date, Assignor operated eighteen (18) gasoline service stations, the balance having terminated operations.

8.      On the Transfer Date, the Assignor and Defendant entered into an agreement styled as an "Operating Agreement," (hereinafter referred to as the "Transfer Agreement"), a copy of which is annexed hereto and incorporated herein as Exhibit "A."

9.      The Transfer Agreement provided that, in exchange for Defendant's forbearance in pursuing payment of its claim against Assignor, asserted to exceed Four

2

Million Dollars ($4,000,000.00), Assignor conveyed complete control of eight (8) of its gasoline service stations to Defendant.

10.    Notwithstanding the fact that the Transfer Agreement purports to provide Defendant with a means of obtaining payment of its claim as opposed to outright ownership of assets, it does not terminate upon satisfaction of the claim. Rather, the Agreement, which has no termination date, constitutes a conveyance of valuable assets to Defendant, and to the exclusion of all other creditors of the assignment estate.

11.    The Transfer Agreement also authorized Defendant to exercise Assignor's rights under its leases for the eight (8) gasoline service station locations, notwithstanding that many, if not all, of the leases prohibited a tenant assignment absent the landlord's consent. To Plaintiff's knowledge, no such consents were obtained by Assignor.

12.    Since execution of the Transfer Agreement, Defendant has been in control of the eight (8) gasoline service stations and has collected all revenues generated from their operations. Despite demand, it has failed and refused to provide Assignor with an accounting of cash receipts and disbursements generated from its operations.

13.    Upon information and belief, the eight (8) gasoline service station locations conveyed by Assignor to Defendant were the most profitable of Assignor's then existing locations. At or about the time of execution of the the Transfer Agreement, Assignor terminated its operations at all other locations.

14.    A few weeks after execution of the Transfer Agreement, Assignor executed its Deed of Assignment to Plaintiff.

3

1216464-1

15.    The assignment estate consists of the eighteen (18) leasehold interests for properties utilized as gasoline service stations, inclusive of the eight (8) leased locations subject to the Transfer Agreement.

16.    This action seeks, *inter alia*, to avoid or void the transaction evidenced by the Transfer Agreement based upon the grounds set forth hereinafter.

17.    Assignor is proceeding on an expedited basis to an auction sale of all of the assignment estate's non-litigation assets. In the event that the estate's assets are sold subject to Defendant's disputed rights under the Transfer Agreement, it is anticipated that the sale price thereof will be a fraction of the amount which would be realized in the event that the transfer evidenced by the Transfer Agreement is avoided or voided.

## COUNT ONE

**(Avoidance of the Transfer Agreement and Profits Made as a Result Thereof as Fraudulent Transfers Pursuant to N.J.S.A. 25:2-25(a) – Actual Fraud)**

18.    The Plaintiff realleges and incorporates Paragraphs 1 through 17, as if same were fully set forth herein.

19.    The conveyance evidenced by the Transfer Agreement was made with the intent to hinder delay, or defraud all creditors of the assignment estate (but for Defendant) by rendering the Assignor's most valuable assets unavailable for payment of their claims.

20.    Accordingly, pursuant to N.J.S.A. 25:2-25(a), the Plaintiff is entitled to a judgment avoiding the Transfer Agreement.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count One of the Complaint as follows:

(a)    Pursuant to N.J.S.A. 25:2-25(a), avoiding the Transfer Agreement.

4

1216464-1

(b)   Awarding compensatory damages equal to the amount of all profits generated by Defendant's operation of the gasoline service stations subject to the Transfer Agreement and all other damages incurred by the assignment estate and/or its creditors as a result of such transfers, plus pre- and post-judgment interest, which amount shall be determined at trial, plus pre and post-judgment interest;

(c)   Awarding Plaintiff costs of suit and reasonable attorneys fees; and

(d)   Granting Plaintiff such other and further relief as the Court deems just and equitable.

## COUNT TWO

**(Avoidance of the Transfer Agreement and Profits Made as a Result Thereof as Fraudulent Transfers Pursuant to N.J.S.A. 25:2-25(b) – Constructive Fraud)**

21.   The Plaintiff realleges and incorporates Paragraphs 1 through 20, as if same were fully set forth herein.

22.   The transfer evidenced by the Transfer Agreement was made by Assignor without receiving a reasonably equivalent value in exchange therefore, and Assignor at all relevant times:

(a)   Was engaged in business for which its remaining assets were unreasonably small in relation to the business; or

(b)   Intended to incur, or believed or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

23.   As such, the Transfer Agreement was fraudulent pursuant to N.J.S.A. 25:2-25(b).

5

1216464-1

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count Two of the Complaint as follows:

(a)    Pursuant to N.J.S.A. 25:2-25(b), avoiding the Transfer Agreement;

(b)    Awarding compensatory damages equal to the amount of all profits generated by Defendant's operation of the gasoline service stations subject to the Transfer Agreement and all other damages incurred by the assignment estate and/or its creditors as a result of such transfers, plus pre- and post-judgment interest, which amount shall be determined at trial, plus pre and post-judgment interest;

(c)    Awarding Plaintiff costs of suit and reasonable attorneys' fees; and

(d)    Granting Plaintiff such other and further relief as the Court deems just and equitable.

## COUNT THREE

**(Avoidance of the Transfer Agreement
as a Preferential Transfer Pursuant to N.J.S.A. 2A:19-3)**

24.    The Plaintiff realleges and incorporates Paragraphs 1 through 23, as if same were fully set forth herein.

25.    Within four (4) months of the Assignment Date, Assignor transferred to Defendant its interests in gasoline service stations having a substantial, albeit undetermined, value.

26.    The transfer made pursuant to the Transfer Agreement was made while the Assignor was insolvent.

27.    The transfer made pursuant to the Transfer Agreement was made with the intention of preferring one of Assignor's creditors over others.

6

1216464-1

28.    The transfer made pursuant to the Transfer Agreement was in violation of N.J.S.A. 2A:19-3, and thus the Assignee is entitled to avoid such transfer and recover damages from the Defendant.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count Three of the Complaint as follows:

(a)    Pursuant to N.J.S.A. 2A:19-3, avoiding the transfer made pursuant to the Transfer Agreement.

(b)    Awarding compensatory damages in the amount of all profits generated from the operation of the service stations which are the subject of the Transfer Agreement and all other damages incurred by the assignment estate and/or its creditors as a result of such transfers, plus pre- and post-judgment interest;

(c)    Awarding Plaintiff costs of suit and reasonable attorneys' fees; and

(d)    Granting Plaintiff such other and further relief as the Court deems just and equitable.

## COUNT FOUR

### (Declaratory Judgment that the Transfer Agreement is Null and Void)

29.    The Plaintiff realleges and incorporates Paragraphs 1 through 28, as if same were fully set forth herein.

30.    While captioned as an Operating Agreement, the legal effect of the Transfer Agreement was to convey Assignor's right, title and interest in the lease agreements for the gasoline service station locations without obtaining the consent of the Assignor's landlords as required by the lease agreements governing the subject locations.

7

1216464-1

31.    Some or all of the landlords under the lease agreements governing the locations which are the subject of the Transfer Agreement are also creditors of the assignment estate.

32.    In accordance with the provisions of <u>N. J. S. A.</u> 2A:19-14, a conveyance or transfer by the assignor that is void or voidable as against creditors of the assignor is also voidable as against the Assignor.

33.    The conveyance of leasehold interests as provided for under the Transfer Agreement, as violative of the provisions of the governing lease agreements for the subject locations, renders the conveyance evidenced by the Transfer Agreement null and void.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count Four of the Complaint as follows:

(a)    Declaring that the Transfer Agreement is null, void and of no force and effect;

(b)    Awarding Plaintiff costs of suit and reasonable attorneys' fees; and

(c)    Granting Plaintiff such other and further relief as the Court deems just and equitable.

<u>COUNT FIVE</u>

**(For Turnover)**

34.    The Plaintiff realleges and incorporates Paragraphs 1 through 33, as if same were fully set forth herein.

35.    The property subject to the Transfer Agreement constitutes property of the Assignment estate.

8

1216464-1

36.     The Assignee is solely authorized to administer property of the Assignment estate. Anyone in possession of property of the Assignment Estate is required to turnover possession of that Property to the Assignee.

37.     The transfers of property interests made pursuant to the Transfer Agreement, inclusive of rights of possession of the leased premises and personalty located thereon, are void and/or voidable for the reasons set forth hereinabove and, thusly are required to be returned to the Assignment Estate.

38.     Despite demand, Defendant has refused and continues to refuse to turnover possession of the leased premises and personalty located thereon to the Plaintiff.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count Five of the Complaint as follows:

(a)     Directing the Defendant to immediately turnover possession to the Plaintiff of the leased premises which are the subject of the Transfer Agreement and all personalty located thereon.

(b)     Awarding attorneys' fees and costs of suit.

(c)     Granting Plaintiff such other and further relief as the Court deems just and equitable.

## COUNT SIX

### (For an Accounting)

39.     The Plaintiff realleges and incorporates Paragraphs 1 through 38, as if same were fully set forth herein.

40.     The Transfer Agreement specifically provides that Defendant "shall have the right to all revenues from the locations" and shall be responsible for rental payments

9

1216464-1

and all expenses of operations during the period it operates the facilities.

41.    Upon information and belief, the operation of the gasoline service station which are the subject of the Transfer Agreement are generating profits.

42.    The profits generated from assets which were the subject of an agreement which is voidable or void.

43.    Accordingly, any profits generated from the operation of the service station facilities subject to the Transfer Agreement must be tendered by Defendant to the Plaintiff.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the Defendant on Count Six of the Complaint as follows:

(a)    Directing that the Defendant provide to Plaintiff a full and complete accounting of (a) all of the Assignor's assets which it acquired under the Transfer Agreement; and (b) all cash receipts and disbursements generated from the operation of the gasoline service stations acquired from the date Defendant acquired possession.

(b)    Awarding Plaintiff costs of suit and reasonable attorneys' fees; and

(c)    Granting Plaintiff such other and further relief as the Court deems just and equitable.

NORRIS, McLAUGHLIN & MARCUS, P.A.
Attorneys for Plaintiff

By: _____
        Gary N. Marks

Dated:  February 25, 2014

10

1216464-1

## CERTIFICATION

I hereby certify pursuant to R. 4:5-1 that, to my present knowledge, the matter in controversy is not the subject of any other action in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated at this time, except as follows: (1) G & Y Realty, LLC, delivered a deed of assignment for the benefit of creditors to Steven Mitnick, Assignee on February 9, 2014. The company is being liquidated in proceedings before Judge Hector R. Velazquez in Hudson County. The Assignment proceedings are administered through the Hudson County Surrogate's Office, Docket No. 308205.

I further certify that, to my present knowledge, no other party should be joined in the within action at this time, however, Assignee is still reviewing this matter to determine if additional parties should be joined. This is to further certify that the within pleading has been served within the time provided by the Rules governing the Courts of the State of New Jersey.

NORRIS, McLAUGHLIN & MARCUS, P.A.
Attorneys for Plaintiff

By: _____
Gary N. Marks

Dated: February 25, 2014

11

1216464-1

## VERIFICATION

STEVEN MITNICK, of full age, hereby certifies as follows:

1.     I make this verification in my capacity as Assignee for the Benefit of Creditors of G&Y Realty, LLC.

2.     I have reviewed the foregoing Verified Complaint.

3.     The statements of fact therein are true and correct to the best of my personal knowledge and belief.

4.     I understand that if any of the foregoing statements made by me are found to be willfully false, that I am subject to punishment.

_____
STEVEN MITNICK

DATED: February 25, 2014

12

1216464-1

**NORRIS McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ  08807-5933
(908) 722-0700
Attorneys for Plaintiff, Steven Mitnick, Assignee

FEB 2 8 2014

SUPERIOR COURT
CHANCERY DIVISION
PROBATE PART
HUDSON COUNTY

|  |  |  |
|---|---|---|
| STEVEN MITNICK, Assignee for the Benefit of Creditors of G & Y Realty, LLC, | : : : : : | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION, PROBATE PART: HUDSON COUNTY |
| Plaintiff, | : : | DOCKET NO. 308205 |
| | : : | Civil Action |
| vs. | : : | **CERTIFICATION OF STEVEN** |
| HARIS, ALKOC & SABIR, INC., a New Jersey Corporation, | : : : : | **MITNICK, ASSIGNEE, IN SUPPORT OF ENTRY OF AN ORDER TO SHOW CAUSE WITHOUT TEMPORARY** |
| Defendant. | : : : | **RESTRAINTS** |

Steven Mitnick, Assignee, hereby certifies as follows:

1.      I am the duly qualified and acting Assignee for the Benefit of Creditors of G & Y Realty, LLC, a New Jersey limited liability company ("Assignor").

2.      I make this Certification in support of my request for the entry of an Order to Show Cause without Temporary Restraints, which is being simultaneously submitted to the Court for its consideration.

3.      The facts set forth herein are true and correct based upon personal knowledge or information provided to me by the Assignor, unless otherwise stated.

4.      On February 9, 2014 ("Assignment Date"), the Assignor executed and delivered to me a Deed of Assignment for the Benefit of Creditors.  The Deed was recorded with the Register of Hudson County and filed with the Surrogate of Hudson County under Docket No. 308205, thereby commencing formal liquidation proceedings ("Assignment Proceedings") under

1

the jurisdiction of the New Jersey Superior Court pursuant to N.J.S.A. 2A:19-1, et seq. and New Jersey Court Rule 4:54.

5.    In accordance with my duties and responsibilities as Assignee in this proceeding, I have undertaken an investigation of the Assignor's business operations, in particular the events resulting in the termination of the Assignor's ongoing operations, which has revealed the following.

6.    Prior to January 15, 2014 (the "Transfer Date"), the Assignor operated gasoline service stations under the "Delta" brand name at various leased locations in northern New Jersey. At one time, the Assignor operated approximately twenty-eight (28) such stations.

7.    Baris, Alkoc & Sabir, Inc. (hereinafter "Defendant") supplied petroleum and related products utilized by the Assignor in the operation of its business.

8.    Upon information and belief, prior to the Transfer Date, Defendant commenced suit against Assignor to recover sums which Defendant claimed were due and owing by Assignor to Defendant.

9.    On January 15, 2014 (the "Transfer Date"), the Assignor and Defendant entered into an agreement styled as an "Operating Agreement," (hereinafter referred to as the "Transfer Agreement"), a copy of which is annexed hereto and incorporated herein as Exhibit "A."

10.    The Transfer Agreement provided that, in exchange for Defendant's forbearance in pursuing payment of its claim against Assignor, Assignor conveyed complete control of eight (8) of its gasoline service stations to Defendant.

11.    The Transfer Agreement authorized Defendant to exercise Assignor's rights under its leases for the eight (8) gasoline service station locations, notwithstanding that many, if not all,

2

of the leases prohibited a tenant assignment absent the landlord's consent. To my knowledge, no such consents were obtained by Assignor.

12.    Since execution of the Transfer Agreement, Defendant has been in control of the eight (8) gasoline service stations and has collected all revenues generated from their operations. Despite demand, it has failed and refused to provide me with an accounting of cash receipts and disbursements generated from its operations.

13.    A few weeks after execution of the Transfer Agreement, Assignor executed its Deed of Assignment to me. The assignment estate consists of eighteen (18) leasehold interests for gasoline service stations, inclusive of the eight (8) leased locations subject to the Transfer Agreement, which are controlled by Defendant.

14.    For the reasons set forth in my Complaint against Defendant which is simultaneously being filing herewith, it is evident that the conveyance evidenced by and resulting from the Transfer Agreement is void or voidable.

15.    I am proceeding, on an expedited basis, with a sealed bid auction of all of the assignment estate's non-litigation assets. In the event that the  assets are sold subject to Defendant's claimed and disputed rights under the Transfer Agreement, it is anticipated that the sale price thereof will be a fraction of the amount which would be realized in the event that the transfer evidenced by the Transfer Agreement is avoided or voided.

16.    I have already retained Auction Advisors of New York, New York, to  prepare for and conduct a public auction sale of all assets of the assignment estate, inclusive of the estate's interests in the leases and personality which were purportedly conveyed by Assignor to Defendant.

17.    In light of the fact that the assignment estate has no liquid assets to enable me to tender rental payments under the leases and in order to avoid a forfeiture of the leases, I have been required to expedite the sale process with respect to the assets. The terms and conditions of the auction will require the submission of sealed bids by March 13, 2014, with a sale hearing to be conducted on March 20, 2014.

18.    In order for the sale process to result in the maximum sale proceeds available to pay claims against the assignment estate, it is necessary that (a) possession of the leased locations and personalty subject to the Transfer Agreement be immediately returned to the assignment estate and the Transfer Agreement declared void ab initio; and (b) I be permitted to sell the the assets free and clear of any claims or interests of Defendant.

19.    For the foregoing reasons, it is imperative that Defendant be directed to turnover possession of the leased premises which are the subject of the Transfer Agreement and all personalty associated therewith.

I hereby certify that the foregoing is true and correct under penalty of perjury.

_____
STEVEN MITNICK, Assignee

Dated: February 24, 2014

4

# EXHIBIT "C"

**Broege, Neumann, Fischer & Shaver, LLC**
Timothy P. Neumann, Esq. [005081973]
25 Abe Voorhees Drive
Manasquan, New Jersey 08736
(732) 223-8484
Attorneys for Defendant Sabir, Inc.

| | |
|---|---|
| STEVEN MITNICK, Assignee for the Benefit of Creditors of G & Y Realty, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> SABIR, INC. (improperly named as BARIS, ALKOC & SABIR, INC.), a New Jersey Corporation, <br><br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br><br> CHANCERY DIVISION, PROBATE PART <br> HUDSON COUNTY <br><br> DOCKET NO. 308205 |

## ANSWER TO COMPLAINT

Defendant, Sabir, Inc., a New Jersey Corporation, by way of Answer to the Complaint of the Plaintiff, states as follows:

## PARTIES

1. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 1 of the complaint and leaves Plaintiff to his proofs.

2. Admitted.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

3. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 3 of the complaint and leaves Plaintiff to his proofs.

4. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 4 of the complaint and leaves Plaintiff to his proofs.

5. Denied and further stated that Assignor operated 26 stations, eight of which may have been transferred to unknown parties.

6. Denied.

7. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 7 of the complaint and leaves Plaintiff to his proofs.

8. Admitted.

9. The Transfer Agreement speaks for itself. Plaintiff's characterizations of the terms of the Agreement are not facts.

10. Denied.

11. Denied.

12. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 12 of the complaint and leaves Plaintiff to his proofs.

13. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 1 of the complaint and leaves Plaintiff to his proofs.

14. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 14 of the complaint and leaves Plaintiff to his proofs.

15. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 15 of the complaint and leaves Plaintiff to his proofs.

16. What this action seeks or does not seek belongs in the prayer for relief at the end of the complaint and is not a fact requiring admission or denial.

17. Defendant has insufficient knowledge with which to either admit or deny the allegations of paragraph 17 of the complaint and leaves Plaintiff to his proofs.

## AS TO COUNT ONE
### (alleged actual fraudulent transfer)

18. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 17 of Plaintiff's Verified Complaint as though the same were more fully and at length set forth herein.

19. Denied.

20. Denied.

## AS TO COUNT TWO
### (alleged constructive fraudulent transfer)

21. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 20 of Plaintiff's Verified Complaint as though the same were more fully and at length set forth herein.

22. Denied.

23. Denied.

## AS TO COUNT THREE
### (alleged preferential transfer)

24. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 23 of Plaintiff's Verified Complaint as though the same were more fully and at length set forth herein.

25. Admitted that Assignor transferred its interest in the 8 stations to Defendant. Defendant has insufficient knowledge with which to either admit or deny the remainder of the allegations of paragraph 25 of the complaint and leaves Plaintiff to his proofs.

Case 14-16010-RG   Doc 11-1   Filed 04/04/14   Entered 04/04/14 10:38:37   Desc
Certification of Steven Mitnick in Support of Motion for Entry of an Order Dismi   Page 36 of 91

Page 4 of 9

26. Defendant has insufficient knowledge with which to either admit or deny the allegations of
paragraph 26 of the complaint and leaves Plaintiff to his proofs.

27. Denied.

28. Denied.

## AS TO COUNT FOUR
### (alleged entitlement to declaratory judgment)

29. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 23 of
Plaintiff's Verified Complaint as though the same were more fully and at length set forth
herein.

30. Denied.

31. Defendant has insufficient knowledge with which to either admit or deny the allegations of
paragraph 26 of the complaint and leaves Plaintiff to his proofs.

32. Paragraph 32 pleads law, not fact. To the extent Plaintiff is alleging that N.J.S.A. 2A:19-14
operates to enable Plaintiff to invalidate the Transfer Agreement, such allegations are denied.

33. Denied.

## AS TO COUNT FIVE
### (alleged entitlement to turnover)

34. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 33 of
Plaintiff's Verified Complaint as though the same were more fully and at length set forth
herein.

35. Denied.

36. Denied.

37. Denied.

38. It is denied that Plaintiff made any demand for turnover of possession and further stated that Plaintiff advised Defendant to remain in possession and maintain the status quo.

## AS TO COUNT SIX
### (alleged entitlement to accounting)

39. Defendant repeats its answers to the allegations contained in Paragraphs 1 through 38 of Plaintiff's Verified Complaint as though the same were more fully and at length set forth herein.

40. Admitted.

41. Denied.

42. Denied.

43. Denied.

### FIRST AFFIRMATIVE DEFENSE
### N.J.S.A. 25:2-30(a)

Defendant obtained its rights under the Transfer Agreement (as defined in paragraph 8 of the Verified Complaint) in good faith and for a reasonably equivalent value

### SECOND AFFIRMATIVE DEFENSE
### N.J.S.A. 25:2-30(f)(1)

Defendant gave new value for the benefit of Assignor by the payment of the debts of Assignor and assumption of liabilities

### THIRD AFFIRMATIVE DEFENSE
### N.J.S.A. 25:2-30(f)(3)

The transfers to Defendant were made pursuant to a good-faith effort to rehabilitate the Assignor and the transfer secured present value given for that purpose as well as an antecedent debt of the Assignor.

Defendant reserves the right to amend his Answer to assert such other and further defenses as may be revealed during the course of discovery and investigation in this action.

BROEGE, NEUMANN, FISCHER & SHAVER, LLC
Attorneys for Defendant

By_____
TIMOTHY P. NEUMANN
New Jersey Bar ID: [005081973]

Dated: March 13, 2014

I hereby certify that the within Answer was duly forwarded for filing and service within the time allowed by the rules of this Court.

_____
TIMOTHY P. NEUMANN

I hereby certify that the matter in controversy is not the subject of any other action pending in any court and is not the subject of any pending arbitration proceeding, and that no such action or proceeding is contemplated. To the best of my knowledge, no other party should be joined in this action.

_____
TIMOTHY P. NEUMANN

## DESIGNATION OF TRIAL ATTORNEY

TIMOTHY P. NEUMANN, ESQ. is hereby designated as trial counsel pursuant to Rule 4:25-4.

_____
TIMOTHY P. NEUMANN

# EXHIBIT "D"

FILED

_Atty ID : 020791977_

**NORRIS McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700 / 0755 (Fax)
Attorneys for Plaintiff, Steven Mitnick, Assignee

MAR  8 2014

SUPERIOR COURT
CHANCERY DIVISION
PROBATE PART
HUDSON COUNTY

|  |  |  |
|---|---|---|
| STEVEN MITNICK, Assignee for the Benefit of Creditors of G & Y Realty, et al., | : | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION, PROBATE PART: HUDSON COUNTY |
| Plaintiff, | : | DOCKET NO. 308205 |
|  | : | Civil Action |
| BARIS, ALKOC & SABIR, INC., a New Jersey Corporation, | : | **ORDER TO SHOW CAUSE** |
| Defendant. | : |  |

THIS MATTER being brought before the Court by Norris, McLaughlin & Marcus, P.A.,

attorneys for Plaintiff, Steven Mitnick, Assignee for the Benefit of Creditors of G & Y Realty,

LLC (the "Plaintiff"), seeking relief by way of summary action based upon the facts set forth in

the verified Complaint (the "Complaint") and Certification of Steven Mitnick, Assignee, in

Support of Entry of Order to Show Cause ("Assignee's Certification"), which have been filed of

record; and the Court having determined that this matter may be commenced by order to show

cause as a summary proceeding pursuant to R.4:83-1; and for good cause shown;

IT IS on this 8th day of March, 2014,

ORDERED that the Defendant Baris, Alkoc & Sabir, Inc. (the "Defendant") named in

the Complaint appear and show cause on the 3rd day of ~~March~~ APRIL, 2014, before the Superior  *

Court, Chancery Division, Probate Part at the ~~Hudson County~~ Brennan Courthouse, ~~595~~ 583 Newark Avenue, 4th Floor,

in Jersey City, New Jersey at 9:00 o'clock in the fore noon, or as soon thereafter as counsel

* Hon. Lourdes I. Santiago, J.S.C., at the

can be heard, why (a) Defendant should not be directed to immediately return possession of the

eight (8) gasoline service stations transferred by G&Y Realty, LLC, Assignor (the "Assignor")

to Defendant  pursuant to the provisions of the January 15, 2014 "Operating Agreement"

between  Assignor and Defendant; and (b) Plaintiff should not be permitted to sell the leasehold

interests and personalty which are the subject of the "Operating Agreement"  free and clear of

any claims or interests  of Defendant as part of the ongoing ABC proceedings now pending in

this Court; and it is further

ORDERED that Defendant, if it wishes to be heard with respect to the relief requested in

the Complaint and Assignee's Certification served with this Order to Show Cause, shall file with

the Surrogate of Hudson County and serve upon the attorney for the Plaintiff at the address set

forth above a written answer, an answering affidavit, a motion returnable on the date this matter

is scheduled to be heard, or other response to this Order to Show Cause and to the relief

requested in the Complaint ~~by March~~ ~~, 2014~~. *at least 8 days prior to the hearing date.* Such filing shall be made with the Surrogate of

Hudson County at ~~595~~ *583* Newark Avenue, *1st Floor,* Jersey City, New Jersey 07306. Such responding party

in interest shall also file with the Surrogate by the foregoing date a proof of service upon the

Plaintiff.  ~~[A copy of such response shall also be filed directly with the chambers of Judge~~

~~at the following address:~~ ]

     1.     If Defendant fails to timely file and serve a response in the manner set

forth above shall be deemed in default, the matter may proceed to judgment without any further

notice to or participation by such defaulting party in interest, and the judgment shall be binding

upon such defaulting party in interest.

     2.     Defendant is hereby advised that a telephone call to Plaintiff, Plaintiff's

attorney, the Surrogate, or the Court will not protect your rights; you must file and serve your

1216401-1

answer, answering affidavit, motion or other response with the filing fee required by statute. The check or money order for the filing fee shall be made payable to the Surrogate of Hudson County. If you cannot afford an attorney, you may call the Legal Services office in the county in which you live. A list of these offices is provided. If you do not have an attorney or are not eligible for free legal assistance through the Legal Services office (or such office does not provide services for this particular type of proceeding), you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these office numbers is also provided.

3.     If Defendant does not timely file and serve a response to this order to show cause as provided for above, the matter may be decided by the Court on or after the date this matter is scheduled to be heard, and may be decided on the papers without a hearing, provided that the Plaintiff has filed a proof of service and submitted a proposed form of judgment.

4.     If Defendant timely files a response as provided for above, the court may entertain argument and testimony on the date this matter is scheduled to be heard.

5.     Plaintiff must file and serve any written reply to the response of a party in interest ~~by March _____, 2014~~ *at least 5 days prior to the hearing date.* The reply papers together with a proof of service must be filed with the Surrogate in the county listed above. ~~and a copy of the reply papers must be sent directly to the chambers of Judge _____ }.~~

6.     Plaintiff shall submit to the Surrogate an original and two copies of a proposed form of judgment addressing the relief sought on the date this matter is scheduled to be heard (along with a postage-paid return envelope) no later than *three* (3) days before the date this matter is scheduled to be heard.

1216401-1

7.     A copy of this Order to Show Cause, the Complaint, and Assignee's ~~regular mail and~~ Certification shall be served upon Defendant by certified mail, ~~facsimile transmission, electronic mail,~~ overnight delivery or hand delivery within ~~( )~~ 20 days days of the date hereof, ~~hearing~~ in accordance with R. 4:67-3, R. 4:4-3 and R. 4:4-4, this order to show cause being original process.

8.     Plaintiff shall file with the Surrogate of Hudson County a proof of service of the documents required to be served on Defendant no later than eight (8) days before the date this matter is scheduled to be heard.

9.     The Court will entertain argument, but not testimony, on the return date of the order to show cause, unless the Court and parties are advised to the contrary ~~no later than ( ) days~~ before the return date.


_Donald W De Leo_

~~J.S.C.~~   Hon. Donald W. De Leo
          Surrogate / Judge

1216401-1

| | |
|---|---|
| Atlantic County Surrogate<br>Atlantic County Civil Courthouse<br>1201 Bacharach Blvd. Atlantic City, NJ 08401 | ATLANTIC COUNTY:<br>LAWYER REFERRAL: (609) 345-3444<br>LEGAL SERVICES: (609) 348-4200 |
| Bergen County Surrogate<br>Bergen County Justice Center<br>10 Main Street, Room 211,<br>P.O. Box 600, Hackensack, NJ 07601-7691 | BERGEN COUNTY:<br>LAWYER REFERRAL: (201) 488-0044<br>LEGAL SERVICES: (201) 487-2166 |
| Burlington County Surrogate<br>Burlington County Court Complex<br>49 Rancocas Road, 1st floor<br>PO Box 6000, Mt. Holly, NJ 08060-1827 | BURLINGTON COUNTY:<br>LAWYER REFERRAL: (609) 261-4862<br>LEGAL SERVICES: (800) 496-4570 |
| Camden County Surrogate<br>Camden County Surrogate Office<br>415 Federal Street, Camden, NJ 08103-1122 | CAMDEN COUNTY<br>LAWYER REFERRAL: (856) 964-4520<br>LEGAL SERVICES: (856) 964-2010 |
| Cape May County Surrogate<br>4 Moore Rd., POB 207<br>Cape May Court House, NJ 08210 | CAPE MAY COUNTY:<br>LAWYER REFERRAL: (609) 463-0313<br>LEGAL SERVICES: (609) 465-3001 |
| Cumberland County Surrogate<br>Cumberland County Courthouse<br>60 West Broad Street, Suite A111<br>Bridgeton, NJ 08302 | CUMBERLAND COUNTY:<br>LAWYER REFERRAL: (856) 692-6207<br>LEGAL SERVICES: (856) 451-0003 |
| Essex County Surrogate<br>206 Hall of Records<br>465 Dr. Martin Luther King, Jr. Blvd.,<br>Newark, NJ 07102 | ESSEX COUNTY:<br>LAWYER REFERRAL: (973) 622-6207<br>LEGAL SERVICES: (973) 624-4500 |
| Gloucester County Surrogate<br>Surrogate Building<br>17 North Broad Street, 1st flr.<br>P.O. Box 177, Woodbury, NJ 08096-7177 | GLOUCESTER COUNTY:<br>LAWYER REFERRAL: (856) 848-4589<br>LEGAL SERVICES: (856) 848-5360 |
| Hudson County Surrogate<br>Administration Bldg.<br>595 Newark Ave., Room 107<br>Jersey City, NJ 07306 | HUDSON COUNTY:<br>LAWYER REFERRAL: (201) 798-2727<br>LEGAL SERVICES: (201) 792-6363 |
| Hunterdon County Surrogate<br>Hunterdon County Justice Center<br>65 Park Avenue<br>P.O. Box 2900, Flemington, NJ 08822-2900 | HUNTERDON COUNTY:<br>LAWYER REFERRAL: (908) 263-6109<br>LEGAL SERVICES: (908) 782-7979 |
| Mercer County Surrogate<br>Mercer County Courthouse<br>175 So. Broad Street<br>P.O. Box 8068, Trenton, NJ 08650-0068 | MERCER COUNTY:<br>LAWYER REFERRAL: (609) 585-6200<br>LEGAL SERVICES: (609) 695-6249 |
| Middlesex County Surrogate<br>Administration Building<br>75 Bayard Street,<br>PO Box 790 New Brunswick, NJ 08903-0790 | MIDDLESEX COUNTY:<br>LAWYER REFERRAL: (732) 828-0053<br>LEGAL SERVICES: (732) 249-7600 |
| Monmouth County Surrogate<br>Hall of Records<br>1 East Main Street<br>P.O. Box 1265, Freehold, NJ 07728-1265 | MONMOUTH COUNTY:<br>LAWYER REFERRAL: (732) 431-5544<br>LEGAL SERVICES: (732) 866-0020 |

1216401-1

| | |
|---|---|
| Morris County Surrogate<br>Administrative & Records Bldg, 5th Fl.<br>Court Street<br>P.O. Box 900 Morristown, NJ 07963-0900 | MORRIS COUNTY:<br>LAWYER REFERRAL: (973) 267-5882<br>LEGAL SERVICES: (973) 285-6911 |
| Ocean County Surrogate<br>Ocean County Courthouse<br>118 Washington Street<br>P.O. Box 2191, Toms River, NJ 08754-2191 | OCEAN COUNTY:<br>LAWYER REFERRAL: (732) 240-3666<br>LEGAL SERVICES: (732) 341-2727 |
| Passaic County Surrogate<br>Passaic County Courthouse<br>77 Hamilton Street<br>Paterson, NJ 07505 | PASSAIC COUNTY:<br>LAWYER REFERRAL: (973) 278-9223<br>LEGAL SERVICES: (973) 523-2900 |
| Salem County Surrogate<br>Salem County Surrogate's Court<br>92 Market Street<br>Salem, NJ 08079 | SALEM COUNTY:<br>LAWYER REFERRAL: (856) 678-8363<br>LEGAL SERVICES: (856) 451-0003 |
| Somerset County Surrogate<br>Somerset Co. Surrogate's Office<br>20 Grove Street<br>P.O. Box 3000, Somerville, NJ 08876 | SOMERSET COUNTY:<br>LAWYER REFERRAL: (908) 685-2323<br>LEGAL SERVICES: (908) 231-0840 |
| Sussex County Surrogate<br>Sussex County Surrogate's Court<br>4 Park Place, 2nd flr.,<br>Newton, NJ 07860 | SUSSEX COUNTY:<br>LAWYER REFERRAL: (973) 267-5882<br>LEGAL SERVICES: (973) 383-7400 |
| Union County Surrogate<br>Union County Courthouse<br>2 Broad Street, 2nd flr.<br>Elizabeth, NJ 07207-6001 | UNION COUNTY:<br>LAWYER REFERRAL: (908) 353-4715<br>LEGAL SERVICES: (908) 354-4340 |
| Warren County Surrogate<br>Warren County Courthouse<br>413 Second Street<br>Belvidere, NJ 07823-1500 | WARREN COUNTY:<br>LAWYER REFERRAL: (908) 387-1835<br>LEGAL SERVICES: (908) 475-2010 |

1216401-1

# EXHIBIT "E"

GARY N. MARKS, ESQ. (20791977)
NORRIS McLAUGHLIN & MARCUS, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ  08807-5933
(908) 722-0700
Attorneys for Plaintiff, Steven Mitnick, Assignee

|  |  |  |
|---|---|---|
| **STEVEN MITNICK, Assignee for the Benefit of Creditors of G & Y Realty, LLC,** | : : : : | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION, PROBATE PART: HUDSON COUNTY |
| Plaintiff, | : : | DOCKET NO. 308205 |
| vs. | : : | Civil Action |
| **BARIS, ALKOC & SABIR, INC., a New Jersey Corporation,** | : : : | ORDER VOIDING TRANSFER AGREEMENT |
| Defendant. | : : : | |

This matter having been opened to the Court by Verified Complaint (the "Verified Complaint")[1] filed on behalf of Steven Mitnick, Assignee for the Benefit of Creditors of G&Y Realty, LLC ("Plaintiff"), by and through counsel, Norris, McLaughlin & Marcus, P.A., seeking to set aside a pre-assignment transfer to the defendant Baris, Alkoc & Sabir, Inc. (the "Defendant"); and an Order to Show Cause having been entered on March 8, 2014 directing the Defendant to appear and show cause why the transfer should not be voided; and it appearing that the Defendant was duly served with a copy of the Order to Show Cause and Verified Complaint; and Defendant having filed opposition to the Order to Show Cause and Verified Complaint; and the Court, having reviewed the papers submitted by the parties; and a hearing having been conducted on the Order to Show Cause and Verified Complaint; and for good cause shown;

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Verified Complaint.

1

IT IS, on this _____ day of _____, 2014;

ORDERED that:

1.    The Transfer Agreement, as defined in the Verified Complaint, be and is hereby deemed null and void.

2.    The Defendant be and is hereby directed to immediately turnover to the Assignee possession and control of all property transferred pursuant to the terms of the Transfer Agreement.

3.    Within ten (10) days after the entry of this Order, Defendant be and is hereby directed to provide an accounting of (a) all of G & Y Realty, LLC's assets which it acquired under the Transfer Agreement; and (b) all cash receipts and disbursements generated from the operation of the gasoline service stations acquired from the date Defendant acquired possession to the present.

4.    Nothing herein shall be deemed to constitute an adjudication of any other claims by Plaintiff against Defendant, inclusive of, but not limited to, claims to recover additional preferential transfers or fraudulent conveyances, whether currently known or unknown.

5.    A copy of this Order will be served on all parties by counsel for Plaintiff within _____ days of receipt.


_____
                                                                              J.S.C.


_____    Opposed
_____    Unopposed


2

# EXHIBIT "F"

Steven Mitnick, Esq. (Attorney ID No. 013111981)
MITNICK & MALZBERG, P.C.
29 Race Street
P. O. Box 429
Frenchtown, New Jersey 08825
(908) 996-3716

| | | |
|---|---|---|
| In the Matter of the General Assignment | : | SUPERIOR COURT OF NEW JERSEY |
| for the Benefit of Creditors of: | : | CHANCERY DIVISION: PROBATE PART |
| | : | HUDSON COUNTY |
| G & Y REALTY, LLC | : | |
| | : | Docket No. 308205 |
| Assignor | : | |
| | : | On Assignment |
| -to- | : | |
| | : | NOTICE OF SEALED BID AUCTION SALE OF |
| | : | LEASEHOLD INTERESTS AND OTHER ASSETS |
| STEVEN MITNICK, | : | |
| | : | |
| Assignee | : | |

TO: THE CREDITORS OF G & Y REALTY, LLC

　　　　PLEASE TAKE NOTICE that a sealed bid auction sale of the leasehold interests and other assets of G&Y

Realty, LLC, will be conducted and held by AuctionAdvisors, on March 12, 2014 at 5:00 PM, by the delivery of

signed purchase agreements constituting firm offers to Auction Advisors, c/o NRC at 350 W. Ontario, 4th Floor

Chicago, IL 60654. All offers must be accompanied by certified funds equal to 25% of the bid amount, provided,

however, there shall be minimum bid deposit amount of $10,000.00 and a maximum deposit amount of

$50,000.00. No credit bidding will be permitted nor any set-offs recognized. All bidders must submit bidder

qualification forms prior to bid submission demonstrating the resources and ability of a bidder to consummate the

transaction and fulfill the Assignors obligations under any leasehold interest. Said assets consist of 18 leasehold

interests, together with related fixtures, equipment and inventory used in the Assignor's business. Any bidder can

bid on all the leaseholds and/or on any number or combination of sites.

　　　　PLEASE TAKE FURTHER NOTICE THAT the Assignee will make known to the extent available the identity of

the potential successful bidder(s) and the bid prices to the Court and landlords on or before March 14, 2014. Any

and all offers and bids are subject to higher or better offers to be made up until the hearing.

PLEASE TAKE FURTHER NOTICE THAT for a more complete listing of the assets sold and or terms and conditions of the Sealed bid auction you can contact the auctioneer, AuctionAdvisors at the below contact information or access their website at www.AuctionAdvisors.com/NRC.

PLEASE TAKE FURTHER NOTE that said sealed bid auction sale will be conducted free and clear of any liens or other financial obligations or encumbrances. The sale is conditioned upon an Order approving the sale and assignment of the leasehold interests.

PLEASE TAKE FURTHER NOTICE that the hearing on confirmation of said sale will be held on March 20, 2014 at 9:00 a.m. before the Honorable Lourdes I. Santiago, Judge of the Superior Court of New Jersey, Hudson County Court House, 583 Newark Avenue, 4th Floor, Jersey City, New Jersey. Any objections to the sale and or Assignment of the leasehold interests by creditors, landlords and or any parties in interest must be filed and served upon the Court, Superior Court of New Jersey, Hudson County Court House, 583 Newark Avenue, 4th Floor, Jersey City, New Jersey, Assignee, Steven Mitnick at P.O. Box 429, 29 Race Street, Frenchtown, NJ 08825 and Assignee's counsel, Gary Marks, Esq. of Norris, McLaughlin & Marcus, P.A.721 Route 202-206, Suite 200, P.O. Box 5933, Bridgewater, NJ 08807-5933 on or before March 17, 2014.

STEVEN MITNICK, ESQ.
Assignee

Dated: February 19, 2014

Inquiries regarding the sale should be directed to the Auctioneer, AuctionAdvisors, 1350 Avenue of Americas, 2nd Floor, New York, NY 10019, (212) 375-1222 x703 or (917) 881-1169.

STATE OF NEW JERSEY
Div. of Taxation/Compliance Activity
CN245
Trenton, New Jersey 08646

ATTORNEY GENERAL
State of New Jersey
CN 080
Trenton, New Jersey 08625

INTERNAL REVENUE SERVICE
Holtsville, New York 00501

UNITED STATES ATTORNEY
District of New Jersey
970 Broad Street
Newark, New Jersey 07102

DEPARTMENT OF TREASURY
Internal Revenue Service
1 Newark Center, Suite 1500
Newark, New Jersey 07101

INTERNAL REVENUE
Special Procedures
955 Springfield Avenue, Fl. 3
Springfield, New Jersey 07081

STATE OF NEW JERSEY
Sales and Use Tax
CN 999
Trenton, New Jersey 08646

U. S. ATTORNEY GENERAL
Constitution Avenue
10th NW
Washington, D. C. 20530

STATE OF NEW JERSEY
Gross Income Tax
CN248
Trenton, New Jersey 08646

NEW JERSEY DEPT OF LABOR
Division of Employer Accounts
P.O. Box 917
Trenton, New Jersey 08625-0947

NJ DIV. OF TAXATION/Bulk Sales
CN 245
Trenton, New Jersey 08625

INTERNAL REVENUE SERVICE
P. O. Box 7436
Philadelphia, PA 19101

UNITED STATES ATTORNEY
(For Internal Revenue Service)
970 Broad Street, 5th Floor
Newark, New Jersey 07102

Office of Chief Counsel / IRS
SB/SE Division Counsel
One Newark Center, Suite 1500
Newark, New Jersey 07102-5224

ASSISTANT ATTORNEY GENERAL
Department of Justice, Tax Division
Civil Trial Section, Eastern Region
P. O. Box 227, Ben Franklin Station
Washington, D. C. 20044

ATTORNEY GENERAL'S OFFICE
NJ Attorney General's Office of Law
P. O. Box 119
Trenton, New Jersey 08625

U. S. ENVIRONMENTAL PROTECTION
AGENCY/Region 2
290 Broadway, 17th Floor
New York, New York, 10007-1866

Robert D. Katz
Executive Sounding Board Associates, LLC
1500 John F. Kennedy Blvd, Suite 1730
Philadelphia, PA 19102

Alan Atkins
A. Atkins Appraisal Corp.
122 Clinton Road
Fairfield, NJ 07004

Oren Klein
AuctionAdvisors
1350 Avenue of Americas, 2nd Floor
New York, NY 10019

Gary Marks, Esq.
Norris, McLaughlin & Marcus, P.A.
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807-5933

Bruce Levitt, Esq.
Levitt & Slafkes, PC
76 S. Orange Avenue, Suite 305
South Orange, NJ 07079

Sabir Inc.
252 Broadway
Long Branch, NJ 07740

Daibes Oil LLC
1000 Portside Dr.
Edgewater, NJ 07020

Punjab Enterprises Inc.
16 Hyacinth Dr. #2J
Fords, NJ 08863

HNA Transport LLC
39 Francis Drive
Bridgewater, NJ 08807

Financial Pacific Leasing
3455 S. 344th Way
Auburn, WA 98001

C    ip Capitol & Leasing Inc.
21 Bluff Point Rd.
Northport, NY 11768

S.O.S. Fuels
10 E. Village Road
Tuxedo Park, NY 10987

Brink's, U.S.
555 Divienden Dr.
Coppell, TX 75019

Mendon Leasing Corp.
437 Tonnelle Avenue (Route 1 & 9)
Jersey City, NJ 07306

Domenick Perrone/ Mosaic Properties
764 Hickory Rd
Wyckoff, NJ 07481

Chacko Joseph, d/b/a G & V Holdings LLC
2 Alexandria Dr
East Hanover, NJ 07936

SK Fuel Inc.
500 Brooke Avenue
Passaic, NJ 07055

SK Fuel Inc.
509 South 4th Street
Harrison, NJ 07029

S.N. Walz, LLC
169 East Midland Avenue
Paramus, NJ 07652

S.N. Walz, LLC
693 Bryant Street
Paramus, NJ 07652

Sun Fuel, Inc.
451 Irvington Avenue
South Orange, NJ 07079

Spirit of Bergenfield
3 N. Prospect Avenue
Bergenfield, NJ 07621

Thomas Siracusa
19 E. Ivy Lane
Englewood, NJ 07631

Thomas Siracusa
47 Kuggas Place
Bergenfield, NJ 07621

Friends Gasing, Inc.
451 Irvington Avenue
South Orange, NJ 07079

Guiseppe Migale
31 Preston St
Bogota, NJ 07603

Rust Management, LLC
315 Old Hook Road
Westwood, NJ 07675

Rust Management, LLC
Attn: Dmitriy Stoyanovski
2932 W. 5th Street, Apt. 13H
Brooklyn, NY 11224

Bhamet & Amresh Patel
375 Broad Street
Clifton, NJ 07013

Samia Vento
15 Sunrise Dr.
Wayne, NJ 07470

S & T Capital, LLC
9101 Kennedy Blvd.
North Bergen, NJ 07047

S & T Capital, LLC
c/o Felix Nihamin, Esq. as Registered Agent
270 Sylvan Avenue, Suite 255
Englewood Cliffs, NJ 07632

Estate of John E. Sutcliffe, Sr.
C/o D. Bariezas, Executrix
20 Sheehan Dr.
Oak Ridge, NJ 07438

Edgar Jarvis & Joan Jarvis
230 Bryn Mawr Avenue
Lavallette, NJ 08735

Guy W. Triolo (Wayne's Service Station)
519 Heritage Point Dr.
Myrtle Beach, SC 29588

Mary J. and Eleanor M. Monaghan
320 Old Hook Road
Westwood, NJ 07675

Jeffrey S. Monaghan
403 Oak Street
Pennington, NJ 08534

Condolla Real Estate
168 South Main Street
Phillipsburg, NJ 08865

Joy II, LLC
320 Old Hook Road
Westwood, NJ 07675

Joy II, LLC
c/o Joohan Kim
100 Old Palisade Road, Suite 3314
Fort Lee, NJ 07024

F... to Repair LLC
Diane B. Ohanesian and George
Ohanesian
688 William Bliss Dr.
New Milford, NJ 07646

Mega M, LLC
7 Daffodil Way
Old Bridge, NJ 08857

Bank of America, N.A.
800 Market Street
Saint Louis, MO 63101

Gayle Cassidy
320 Old Hook Partners, LLC
108 Woodcliff Avenue
W     cliff Lake, NJ 07677

Estate of John E. Sutcliffe, Sr.
c/o Robert H. Altshuler, Esq.
1330 Hamburg Turnpike, Suite 2
Wayne, NJ 07470-4057

Law Offices of Charles Shaw
Two Executive Drive, Suite 600
Fort Lee, NJ 07024
Counsel to Daibes Oil, LLC

Boland & Rauch Enterprises, Inc.
c/o Robert Boland as President
96 Park Avenue
Dumont, NJ 07628

Charles E. Starkey, Esq.
Starkey Kelly Kenneally Cunningham &
Turnbach
2 Hooper Ave
Toms River, NJ 08753-7604

Jeffrey D. Kaiser, Esq.
Elliot Greenleaf
Union Meeting Corporate Center V
925 Harvest Drive, Suite 300
Blue Bell, PA  19422-1956

Mark D. Madaio, Esq.
29 Legion Dr
Bergenfield, NJ 07621-2387

Jeffrey S. Monaghan, Esq.
Pellettieri Rabstein & Altman
Suite 111
100 Nassau Park Blvd
Princeton, NJ 08540

Mark Williams, Esq.
Mehr LaFrance & Williams
10 E Main Street
Freehold, NJ 07728-2259
Anthony J. Riposta, Esq.

Law Office of Anthony J Riposta
432 Ridge Road
North Arlington, NJ 07031-5315

David S. Catuogno, Esq.
Forman Holt Eliades & Youngman,LLC
Suite 290
80 E State Route 4
Paramus, NJ 07652-2661

# EXHIBIT "G"

| Address | City | Bid Amt | Contract Entity |
|---|---|---|---|
| 9101 John F Kennedy Blvd | North Bergen | $150,000 | NCK Fuel Inc. |
| 19 E Ivy Lane | Englewood | $35,000 | Balwant Parmar |
| 137 S State Street | Hackensack | $10,049 | Chaudhry Qudrat & Bilal Mian & Ali Naveed |
| 318 Huyler Street | South Hackensack | $45,000 | Jay & Jay Gas Inc |
| 3 N Prospect Avenue | Bergenfield | $101,100 | Balwant Parmar |
| 320 Old Hook Road | Westwood | $230,000 | Clinton Auto Service |
| 147-149 Main Avenue | Passaic | $20,000 | Central park food corp. |
| 241 Main Avenue | Passaic | $41,000 | Balwant Parmar |
| 500 Brook Avenue | Passaic | $75,100 | Balwant Parmar |
| 375 Broad Street | Clifton | $50,000 | Central park food corp. |
| 786 River Drive | Garfield | $101,000 | Balwant Parmar |
| 270 US-46 W | Denville | $110,000 | HMG Fuel LLC |
| 217 S Main Street | Wharton | $5,000 | HMG Fuel LLC |
| 205 Passaic Street | Hackensack | $40,000 | Central park food corp. |
| 1405 Hamburg Turnpike | Wayne | $80,000 | HMG Fuel LLC |
| 169 E Midland Avenue | Paramus | $50,000 | NCK Fuel Inc. |
| 315 Old Hook Road | Westwood | $191,000 | Kunal Dobariya |
| 429 River Road | North Arlington | $0 | |

# EXHIBIT "H"

# SCURA, WIGFIELD, HEYER & STEVENS, LLP

ATTORNEYS AT LAW
1599 Hamburg Turnpike
P.O. Box 2031
Wayne, New Jersey 07470
Tel: (973) 696-8391    Fax: (973) 696-8571
WWW.SCURAMEALEY.COM

JOHN J. SCURA II ◊ **
JOHN J. SCURA III ● *
DAVID C. WIGFIELD
CHRISTOPHER HEYER ◊
DAVID L. STEVENS ◊

CHRISTOPHER J. DALALA ●
LYAN HUMMEL
DAVID E. SKLAR ◊

OF COUNSEL
RONALD P. MEALEY ◊

* Certified by the Supreme Court of
   New Jersey as a Civil Trial Attorney

** Board Certified-Business Bankruptcy Law
    American Board of Certification

◊ Also admitted in New York
● Also admitted in Pennsylvania

**Please Reply to Wayne Office**

March 11, 2014

**<u>Via Overnight Mail</u>**
Hon. Lourdes I. Santiago, Judge,
Law Division, Civil & Special Civil Parts
Hudson County Superior Court
Brennan Courthouse
4th Floor
583 Newark Avenue
Jersey City, NJ 07306
Fax: (201) 217-5106

Re:    In the Matter of the General Assignment for the Benefit of Creditors of
       G & Y Realty, LLC, Assignor, To Steven Mitnick, Assignee
       Docket No: 308205

Dear Judge Santiago:

Please be advised that our firm represents landlord, Samia Vento, owner of real estate located at 786 River Rd., Garfield, New Jersey in the above matter. The landlord has a lease with the tenant, G & Y Realty LLC, who is the assignor in the above matter. The assignee is trying to sell the leasehold interest in that lease through an auction sale without the permission or consent of the landlord.

Please accept this letter as a formal objection to the sale of the assignor's interest in the leasehold in the premises located at 786 River Rd., Garfield, NJ.

MARCH 11, 2014                                                                                          PAGE 2

As set forth in the Certification of Samia Vento:

1.    The leasehold interest being proposed to be sold by the assignee is a lease hold interest between G & Y Realty LLC, the tenant, and Samia Vento, the landlord;

2.    Under paragraph 8 of the lease, assignment is specifically prohibited without the consent of the landlord. The section provides as follows:

"the tenant may assign the within lease only upon approval by the landlord, which approval shall not unreasonably be withheld, provided, however that the assignee shall submit to landlord appropriate financial statements and other data to indicate the financial ability of the assignee to perform all of the obligations pursuant to the terms of this lease in a financial and responsible manner";

3.    Contrary to the requirements of this provision, no information as to the financial ability of the proposed assignees of the lease has been provided nor does it appear the landlord is going to be involved in the process of clearing the financial bidders with the landlord;

4.    Moreover, the tenant has placed another party on the property to run the garage and repair operation without the knowledge of the landlord. See paragraph 5 of the Samia Vento Certification. The name of the new operators in possession of the property are Barris Alcoc & Sabir Inc. These new parties are the fuel supplier and creditor who entered into this operating agreement on January 15, 2014 without the knowledge of the landlord;

5.    The so called Operating Agreement entered into with the new parties and attached to the certification of Samia Vento as Exhibit B appears to be a lease by itself with the new parties Barris Alcoc & Sabir Inc. The operating agreement in paragraph 4 states that the debtor "hereby does authorize creditor to exercise all of its rights under said lease is and shall have the right to all revenues from the locations and will be responsible for all payments to landlord and others as may be required under each of the leases from the date of signing this agreement forward". To allow this auction to go forward and potentially introduce another party to this situation is only going to create litigation for me.

Presently, my client objects to the proposed quick auction. Any proposed bidder would have to be approved by my client and the present situation with Baris Alcoc & Sabir, Inc. has to be resolved

**SCURA, WIGFIELD, HEYER & STEVENS, LLP**
ATTORNEYS AT LAW
MARCH 11, 2014

Case 14-16010-RG  Doc 11  Filed 04/04/14  Entered 04/04/14 10:38:37  Desc
Certification of Steven Mitnick in Support of Motion for Entry of an Order Dismi  Page 60 of 91

PAGE 3

Thank you for Your Honor's attention in this matter.

Respectfully,

John J. Scura III

JJSIII/ag
Encls.
cc:  Timothy Neumann, Esq. (via regular mail)
    Steven Mitnick, Esq. (via fax (908) 996-7743 & regular mail)
    Gary Marks, Esq. (via fax (908) 722-0755 & regular mail)
    Gary S. Redish, Esq. (via regular mail)
    Samia Vento

JOHN J. SCURA III, ESQ.,
(Attorney ID 022771993)
SCURA, WIGFIELD, HEYER & STEVENS, LLP
1599 HAMBURG TURNPIKE
WAYNE, NJ 07470
Tel: (973)696-8391
Fax: (973) 696-8571
Attorneys for Landlord Samia Vento

| In the Matter of the General Assignment For the Benefit of Creditors of:<br><br>G & Y REALTY, LLC,<br><br>          Assignor,<br><br>-to-<br><br>STEVEN MITNICK,<br><br>          Assignee. | SUPERIOR COURT OF NEW JERSEY CHANCVERY DIVISION – PROBATE PART<br>HUDSON COUNTY<br><br>Docket No.: 308205<br><br><br>**CERTIFICATION IN OPPOSITION TO SALE OF LEASEHOLD** |

Samia Vento certifies as follows:

    1.     I, Samia Vento, owner of 786 River Road, Garfield, New Jersey (the

property), and submit this certification in opposition to a proposed auction sale of G & Y

Realty LLC's leasehold interest in the property.

    2.     On September 18, 2012 I entered into a lease with G & Y Realty, LLC,

Tenant. See attached **Exhibit A**. Specifically paragraph 8 of the lease provides as

follows:

"the tenant may assign the within lease only upon approval by the landlord, which

approval shall not   unreasonably be withheld, provided, however that the assignee

shall submit to landlord appropriate financial statements and other data to indicate the

financial ability of the assignee to perform all of the obligations pursuant to the terms of this lease in a financial and responsible manner".

3.      As of the date of this certification, there has not been any information provided that would satisfy the above requirements.

4.      As to the rest of paragraph 8, it would appear that the section on subletting does not apply because this auction does not propose a sublet of the premises or facilities and the present tenant is not remaining "responsible for the subtenant's adherence to all of the terms, contents and conditions of the within lease".

5.      Furthermore, at the present time G & Y Realty, LLC, is in breach of the lease. Without my knowledge, the tenant entered into an "Operating Agreement" on January 15, 2014 for the use of the premises by another company, Barris Alkoc & Sabir, Inc. This agreement was entered into between G & Y Realty, LLC and Barris Alkoc & Sabir, Inc. See attached **Exhibit B**. Presently, Alkoc & Sabir Inc. are occupying the property,

6.      Additionally, G & Y has allowed the property to fall in disrepair despite their obligations to maintain the property under the lease. Specifically, the bay doors on the garage are in poor working condition and are in desperate need of repair. Under paragraph 6 of the lease "the tenant shall perform all repairs or replacements required for the ordinary maintenance of the premises". Although this condition has existed for a while nothing is being done about it. It is my position that this work on the garage doors

should be done by the tenant. This is an example of another default under the lease that is not been taken care of properly.

7.    The tenant has stopped paying the sewer bills on the property and we recently received a delinquent sewer notice from the City of Garfield. It is also the tenant's responsibility to pay the utilities on the property.

8.    Finally, I just received a cancellation notice on the insurance policy coverage which is the obligation of the tenant.

I hereby certify that the foregoing statements made by me are true and that if any of these statements are willfully false that I am subject to punishment.

Dated: March 11, 2014

Samia Vento

## ATTORNEY'S CERTIFICATION

Pursuant to R. 1:4-4(c), the Affiant acknowledges the genuineness of the signature and that the document or a copy of an original signature will be filed if requested by the Court or a party to this action.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SCURA, WIGFIELD, HEYER & Stevens, LLP
Attorneys for Landlord Samia Vento

DATE: March 11, 2014                BY: _____
                                         JOHN J. SCURA III, ESQ.

Exhibit A

# LEASE

This Lease made as of September 18, 2012, between Sanna Vento and or an entity to be formed hereinafter referred to as the landlord, and G&Y Realty, LLC, with a business address of 6101 Kennedy Blvd, North Bergen NJ referred to as the tenant.

1. Landlord hereby leases to the tenant and the tenant hereby hires and takes from the landlord, the building known as at 786 River Road, Garfield, New Jersey, to be used and occupied by the tenant as a gasoline service station and automobile repair incidental to the operation of said gasoline station.

2. Terms of Lease   This lease of the demised premises referred to in Section 1 shall be for a term of ten (10) years commencing on October 1, 2012, and ending on September 31, 2022, hereinafter referred to as the lease term, subject to the terms and conditions set forth. Rent commencement shall be November 1, 2012.

3. Rent for the Demised Premises, the Lessee covenants and promises to pay the Lessor by check before the fifth day of each month until the last month of the lease term monthly rentals hereinafter referred to as rent, which shall be net of electric/gas and water charges payable by the Lessee in the following amounts:

   a.    Monthly payment of $8,500.00 per month which shall be mailed to 15 Sunrise Drive, Wayne, New Jersey 07470.

   b.    Each year rent will increase by 2% of the prior months rent   eg. Rent year two will be $8,670.00 per month.

In the event that rent is not received by the 5th day of the month tenant must pay late fee of 5% of the monthly rent then due.

4. Renewal Option   The Lessor hereby grants the Lessee two (2) successive options to renew and extend the Lease Term each for further term of five (5) years next succeeding the last day of the Lease Term, the previous renewal term, upon all the other covenants, conditions and provisions of this Lease, which shall remain in full force and effect a monthly rental rate shall increase as per Paragraph 3b by the parties should the Lessee provide the Lessor notice of intent to renew a minimum of 180 days to renew this Lease.   In the event the Lessee shall elect to exercise one or both of said options to renew and extend the Lease Term, it shall do so by written notice thereof to the Lessor no later than one-hundred eighty (180) days prior to the expiration of the then current Lease Terms and the sending of such renewal notice shall constitute the renewal and extension of the Lease Term in accordance with the terms of such renewal options without the necessity of the execution of a separate renewal Lease. 

5. Termination by Lessee:   In the event the licenses and permits for maintaining and conducting a drive in gasoline filling and service station upon the demised premises shall at anytime be revoked by city, county, state or other duly constituted authority for reasons other than default or neglect on the part of the Lessee, or if for any other reason not occasioned by any default or neglect on the part of the Lessee, the Lessee shall lawfully be prevented from occupying and or using the demised premises as a gasoline service station, then Lessee shall have the right, at its option, to terminate this lease. In the event of the taking of all or any portion

1

of the demised premises by condemnation or exercise of similar governmental taking power which renders the demised premises or the remainder thereof unsuitable for the purposes of a drive in gasoline filling and service station, Lessee may, at its option, either terminate this lease or the Lessee may continue possession of the demised premises should it choose to do so.

6.    Tenant's Responsibilities:    The tenant shall perform all repairs or replacements required for the ordinary maintenance of the premises or any improvement machinery or equipment at its own expense, including all electrical systems and plumbing as may become necessary to maintain said premises in good and safe repair and condition, ordinary wear and tear and damage by fire or other casualty excepted.

Tenant is responsible to keep alarm system activated on premises at its sole cost and expense.

Tenant shall be responsible to maintain all fire extinguishers in compliance with fire code.

Subject to the other provisions of this lease the tenant shall also perform such general maintenance as is necessary to maintain a general appearance about the premises substantially equal to their appearance at the commencement of the term of this lease ordinary wear and tear accepted.  All repairs, renewals, replacements, maintenance and restoration required under this lease shall be commenced and prosecuted to completion with reasonable diligence and shall be made in a good and workman like manner.  Any work required to be done by the landlord shall be conducted in such a way as to minimize disruption of or interference with the tenant's business.  Any equipment installed by the tenant onto the premises may be removed by the tenant at the expiration or termination of this lease provided that the property is returned to its original condition.

7    Quiet Enjoyment:  The Lessor covenants with and for the benefit of the Lessee and its successors and assigns that for so long as Lessee shall pay the rents and perform the covenants and comply with its other obligations under this lease, the Lessee may peacefully and quietly have, hold and enjoy the demised premises for the entire Lease Term and for any renewals thereof free of disturbance by Lessors of any other person claiming through or under Lessor.  

8    Assignment or Sublet.    Tenant may assign the within lease only upon approval by the landlord, which approval shall not unreasonably be withheld, provided, however, that the assignee shall submit to the landlord appropriate financial statements and other data to indicate the financial ability of the assignee to perform all of the obligations pursuant to the terms of this lease in a financial and responsible manner.    Tenant may sublet the premises to an operator of the gasoline station and other facilities at the premises without landlord's consent, provided however that the tenant shall remain responsible for the subtenant's adherence to all of the terms, contents and conditions of the within lease and provided that the existing use is not changed.  Under any circumstances should there be such a sublease, the landlord shall look to the tenant for the payment of the rental in accordance with the terms of such lease.

9    Insurance.    During the Lease Term, Lessee at its sole costs and expense, shall maintain and keep in force for the protection of Lessee and Lessor a storage tank pollution policy

2

and a commercial general liability insurance policy covering claims for personal injury, death and property damage, loss rent during in or about the demised premises for limits of not less than $1,000,000.00 for property damage and $1,000,000.00 for injuries to one or more than one person, single limit amount of $1,000,000.00 during or resulting from tenant's use and occupancy of the demised premises and the common areas as well as that by its agents, employees, contractors and invitees and it shall name landlord as an additional insured on this policy.

6.     Workers compensation and employer liability insurance in accordance with the statutory requirements of the State of New Jersey.  Lessee shall require the insurer to give Lessor at least ten (10) days prior written notice of cancelation or non renewal of such insurance and shall deliver to Lessor certificates of such insurance on an annual basis.  The insurance policies will be with companies authorized to do business in the State of New Jersey and will be delivered to landlord together with proof of payment no later than the commencement of this lease.

10     Environmental Laws: The parties acknowledge that there are certain federal, state and local laws, regulations and guidelines now in effect and that additional laws, regulations and guidelines may hereinafter be enacted relating to or affecting Lessee's use of demised premises. The Lessee will not cause or permit to be caused any act or practice that would violate any of said laws in effect during the lease term or any renewal or extension thereof.  The Lessee agrees that it shall at Lessee's sole cost and expense comply with all the terms and conditions of New Jersey Industrial Site Recovery Act, N.J.S.A. 13.1K-6 et seq  et., N.J.S.A. 58.10A-21 concerning underground storage tanks containing hazardous substances and all rules and regulations promulgated there under as same may be amended from time to time.  The Lessee shall hold the Lessor harmless for any claims or charges that are brought by any governmental entity against Lessor and/or Lessee for any environmental mediation that may be required under or after the lease term as a result of any actions or admissions of the part of the Lessee, or the tenants agents, employers, sub tenants or assignees.

11     The tenant at tenant's sole cost will obtain a policy of insurance in connection with the underground storage tank system and landlord and tenant will be named as parties covered under this policy.

12     Indemnity by Tenant:   Tenant agrees to indemnify and hold harmless landlord from and against all third party claims of whatever nature arising from any act, omission or negligence of tenant or tenant's agents, employees , sub tenants or assignees or arising from any accident, injury or damage whatsoever cause to any such third party or to the property of any third party occurring during the term of this lease in or about the premises or arising from any accident, injury or damage occurring outside the premises where such conduct, damage or injury results or is claimed to have resulted from an act or admission on the part of tenant or its agent, employees, sub tenants or assignees as well as environmental cleanup or damage done to the landlord's premises specifically, as a result of the use thereof by tenant.

3

13.    Costs and Expenses:  This indemnity and hold harmless agreement shall include all reasonable costs, expenses and liabilities in or in connection with any such claim or proceeding brought thereon in defense thereof, including reasonable attorneys' fees. On the last day of the term hereof, or upon any sooner termination as provided herein, tenants shall surrender the premises to the landlord in substantially the same condition as when received, ordinary wear and tear, natural deterioration beyond the control of the tenant excepted. At the option of the landlord, the tenant shall surrender the premises in the condition as at the time of termination and that except as otherwise provided herein, all improvements made thereto shall become the property of the landlord at no additional costs and expense

14.    Taxes:    Real Property Taxes. The Tenant shall be responsible to pay landlord as additional rent any increase in the real property taxes from the base year of 2012.    If the term of this lease shall not begin or expire concurrently with the beginning or expiration in the next fiscal year, the tenant's liability for real estate taxes current installments of special assessments from any tax fiscal year during which the tenant is not in possession of the premises for the entire tax fiscal year shall be prorated on an annual basis

15.    Utilities:    From the date of the occupancy by tenant, if it should occur prior to the effective date of this lease, tenant shall pay all charges or fees for use or consumption of all utilities provided to the premises, including water, gas, electricity, telephone and other utilities and services.

16.    Condemnation:    This lease shall be terminated if all or such part of the leased property is taken or amended for public use to such extent as makes the premise unusable as a gasoline service station

Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority

17.    Quiet Enjoyment; Access to Premises    The landlord covenants that it has full right and power to execute this lease and to grant the estate demised herein so long as tenant is  not in default under any of the terms and conditions of this lease, tenant shall peaceably hold and quietly enjoy the premises and shall have the right of ingress and egress to and from the premises

Landlord shall have such right of access to the premises as reasonably necessary to inspect or repair the premises from time to time at such times as are reasonable; provided however, landlord shall not unreasonably interfere with or disrupt tenant's business operations in doing so

18.    Default by Tenant, Remedies:  Non-payment of rent    It is mutually agreed that in the event that the tenant shall default in the payment of rent or additional rent herein reserved when due, landlord shall not be required to forward notice in writing of such default to tenant

19.    All other defaults.  If tenant shall be in default in performing any of the terms of this lease, other than the provisions requiring the payment of rent, and all other obligations, and if landlord shall give tenant notice in writing of such default and if tenant shall fail to cure such default within ten (10) days after the date of receipt of such notice, the landlord shall have the

4

right to cure such default; and the sums reasonably expended by the landlord in doing so shall be deemed to be additional rent and on demand shall be paid by tenant on the day when the rent shall next become due and payable.

20.   Failure of Tenant to Cure   Upon failure of tenant to cure its default as provided herein, the landlord shall have the immediate right to terminate this lease at its option and to pursue whatever rights and remedies it may have against tenant.

21.   Attorney Fees   If either party named herein brings an action to enforce the terms hereof or declare rights hereunder, the prevailing parties in such action or trial shall be entitled to reasonable attorney fees to be paid by the losing party as fixed by the court.

22.   Security   The tenant has deposited with the landlord two (2) month of security deposit the sum of $17,000.00 (the "Security Deposit") as security for the payment of the rent hereunder and the full and faithful performance by the tenant of the covenants and conditions on the part of the tenant to be performed.  Such Security deposit will be returned to the tenant, without interest, after the expiration of the term hereof, provided that the tenant has fully and faithfully performed all such covenants and conditions and is not in arrears in rent   During the term hereof, the landlord may, if the landlord so elects, have recourse to such Security Deposit, to make good any default by the tenant, and the tenant will, on demand promptly restore the Security Deposit to its original amount   The landlord will assign or transfer the Security Deposit, for the benefit of the tenant, to any subsequent owner or holder of the reversion or title to the Premises, and the assignee will become liable for the repayment thereof as provided in this lease and the assignor will be released by the tenant from all liability to return such Security Deposit   This provision will be applicable to every change in title and does not permit the landlord to retain the Security Deposit after termination of the landlord's ownership.

23.   Authority each individual executing this lease on behalf of Lessor and Lessee represents and warrants that he is duly authorized to execute and deliver this lease on behalf of said entity and that this lease is binding upon said entity   This lease embodies the entire agreement between the parties hereto relative to the leased premises and may not be altered or amended in any respect expect in writing 

24.   If during the term of lease, tenant experiences a release of a petroleum product or any hazardous or toxic substance, the Tenant shall notify Landlord of such event within 48 hours and Tenant shall assume responsibility for all costs and expenses associated with such release   Tenant shall defend, indemnify and hold harmless Landlord for any action, claim, notice or penalty related to any release caused by the Tenant, Tenants agents, servants, etc

25.   Non-Liability of Landlord.  The Landlord shall not be liable for any damage or injury which may be sustained by the Tenant or any other person, as a consequence of the failure, breakage, leakage or obstruction of the water, plumbing, steam, sewer, waste or soil pipes, roof, drains, leaders, gutters, valleys, down-spouts or the like or of the electrical, gas, power, conveyor, refrigeration, sprinkler, air-conditioning or heating systems, elevators or hoisting equipment, or by reason of the elements, or resulting from the carelessness, negligence or improper conduct on the part of any other Tenant or of the Landlord or the Landlord's or this or any other Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or

5

successors, or attributable to any interference with, interruption of or failure, beyond the control of the Landlord, of any services to be furnished or supplied by the Landlord.

26    **Removal of Tenant's Property.** Any equipment, fixtures, goods or other property of Tenant, not removed by the Tenant upon the termination of this lease, or upon any quitting, vacating or abandonment of the premises by the Tenant, or upon the Tenant's eviction, shall be considered as abandoned and the Landlord shall have the right, without any notice to the Tenant, to sell or otherwise dispose of the same, at the expense of Tenant, and shall not be accountable to the Tenant for any part of the proceeds of such sale, if any.

27    **Reimbursement of Landlord.** If the Tenant shall fail or refuse to comply with and perform any conditions and covenants of the within lease, the Landlord may, if the Landlord so elects, carry out and perform such conditions and covenants, at the cost and expense of the Tenant, and the said cost and expense shall be payable on demand, or at the option of the Landlord shall be added to the installment of rent due immediately thereafter but in no case later than one month after such demand, whichever occurs sooner, and shall be due and payable as such. This remedy shall be in addition to such other remedies as the Landlord may have hereunder by reason of the breach by the Tenant of any of the covenants and conditions in this lease contained.

28. **Non-Performance by Landlord.** This lease and the obligation of the Tenant to pay the rent hereunder and to comply with the covenants and conditions hereof, shall not be affected, curtailed, impaired or excused because of the Landlord's inability to supply any service or material called for herein, by reason of any rule, order, regulation or preemption by any governmental entity, authority, department, agency or subdivision or for any delay which may arise by reason of negotiations for the adjustment of any fire or other casualty loss or because of strikes or other labor trouble or for any cause beyond the control of Landlord.

29    **Holdover Status.** In the event that the Tenant shall remain in the Demised Premises after the expiration of the Term of this Lease or after the termination of this Lease, without having executed a new written lease with the Landlord nor an extension to this Lease, such holding over shall not constitute a renewal of extension of this Lease. The Landlord may, at its option, elect to treat the Tenant as one who has not removed at the end of its term and as one who is occupying the premises illegally, and thereupon be entitled to all the remedies against the Tenant provided at law or equity in that situation. Or the Landlord may, at its option, elect to construe such holding over as tenancy from month to month, subject to all terms and conditions of this Lease, except as to duration thereof and rent payable thereunder, and any other term or condition which the Landlord, in its sole discretion, chooses to change, delete or add. The Landlord shall give the Tenant thirty (30) days written notice of any changes, deletions or additions to this Lease. In the event that the Landlord chooses to treat the Tenant as having a holding over or month to month tenancy, the Tenant shall pay monthly rent in advance to the Landlord at a rate equal to one-hundred and fifty (150%) percent of the Rent required of the Tenant in the last month of the lease, together with all items of Additional Rent provided for in the lease.



6

30.    Personal Guaranty.  Guy Madmon hereby unconditionally guarantees to Landlord the prompt compliance and performance of the terms of this Lease, including, but not limited to, the payments of all rental monies due hereunder this Lease including any additional rent that may accrue under this Lease

31.    The Tenant agrees that as part of this lease agreement the owner will leave equipment itemized in Exhibit A, for Tenants use   The Tenant agrees to maintain the equipment in operating order and to replace the equipment if damaged    At the conclusion of the lease if the Tenant has not entered into an agreement with the Landlord to purchase the equipment the tenant must leave the equipment in operating order upon termination/expiration of the lease  It is understood by the Parties that the fuel tanks are being accepted by the Tenant in "where is" and "as is" condition.  In the event that the tanks require repairs/replacement during the lease term or any renewal terms the Landlord shall have the option to repair/replace the tanks or in the alternative may terminate the Lease agreement without penalty or payment to the Tenant of any kind   The Tenant agrees to be responsible for the cost of repairing replacing the pumps and mechanical systems of the pump

        IN WITNESS WHEREOF, the parties have hereunto set their hands and seals or caused these presents to be signed by their proper corporate officers and their proper corporate seal to be hereto affixed on this 19th day of September, 2012.

Witness:                                G & Y Realty, LLC
                                        A New Jersey Limited Liability Company

                                        _____
                                        GUY MADMON, Managing Member

                                        _____ LLC
                                        SAMIA VENTO, Managing Manager

                                                                        7

RIDER TO LEASE AGREEMENT DATED    BETWEEN SAMIA VENTOLLE
("LANDLORD") and G&Y REALTY, LLC ("TENANT"), COVERING PREMISES 786
GARFIELD, NEW JERSEY

Release Upon Vacant Surrender.  The Principal, as defined below, who has executed this
Lease on behalf of the Tenant, covenants, promises and guarantees, that Principal shall be liable
for and pay all Base and Additional Rent that is accrued to the date the premises are vacated
together with the costs of restoring the premises in accordance with the provisions of this Lease
during the period of Tenant's actual occupancy hereunder.  This is an absolute and unconditional
guaranty of payment and shall include the costs of enforcement of this guaranty, including
reasonable attorney's fees.  The obligation of Principal shall cease, be if at or prior to the
expiration or termination of this Lease, upon:

    a)    Tenant's actual vacancy and surrender of the demised premises broom clean.
    b)    The delivery to Landlord of all keys, alarm access codes etc. for said premises.
    c)    The personal delivery to Landlord of a letter executed by Principal and Tenant
          stating that the demised premises are surrendered and vacant and free of all
          tenancies or claims of right therein, and
    d)    The full payment of all Base Rent and Additional Rent due to date or compliance
          with a, b and c above

    Notwithstanding such vacancy and surrender, Tenant shall continue to be liable under the
terms of this Lease for breach hereof and no acceptance by Landlord of any surrender or vacancy
under this paragraph shall be deemed to modify, release, satisfy or otherwise relieve Tenant of
any liability whatsoever hereunder

    The Principal guaranteeing hereunder is GUY MADMON (the "Principal"), residing and
having birth date and social security number as follows.

residing at    _35-06 Allwood.    #LL    For    Lawn    NJ  07410_
with SS#    _CYG-76-76 97_
born    _11/13/1977_

Dated_9-19-12_                          _[signature]_
                                        GUY MADMON
                                        Guarantor

8

# EXHIBIT B

## OPERATING AGREEMENT

It is hereby acknowledged and agreed by and between G & Y Realty, L.L.C. a New Jersey Limited Liability Company, Guy Madmon, Managing Member, having a business address of 9101 Kennedy Boulevard, North Bergen, New Jersey collectively and individually hereinafter referred to as the Debtor & Baris Alkoc & Sabir, Inc. a New Jersey Corporation having a business address of 252 Braodway, Long Branch, New Jersey collectively and individually hereinafter referred to as the Creditor as follows:

1. Creditor has been supplier of petroleum, petroleum products and gasoline service station materials to Debtor for a significant period of time. Due to various business difficulties experienced by the Debtor as well as differences between Debtor and some of it's banking contacts, Debtor is currently arrears in its payment to Creditor in an amount exceeding four million dollars.

2. Debtor has been engaged in negotiations with its bank in order to bring about transfers of some of its funds and is optimistic that it will be able to complete those transfers within a reasonable time. Debtor agrees that when it obtains access to said sums, the first priority for payment will be to Creditor in the amount of two million dollars.

3. Creditor will forbear from initiating any debt enforcement against Debtor upon terms and conditions hereinafter set out.

4. Debtor represents that it has leases which are in good standing to multiple gasoline service station properties. Those leases are referred to in Schedule A attached and made part hereof. Creditor and Debtor agree that Debtor will and hereby does authorize Creditor to exercise all of its rights under said leases and shall have the right to all revenues from the locations and will be responsible for all payments to the landlord and others as may be required under each of the leases from this date of signing this agreement forward. Creditor will also be responsible for all expenses including employee wages during its operating of said facilities.

5. Each signatory to this agreement is jointly and severally liable for fulfilling all of the obligations contained herein. Each signatory has had an opportunity to review this Agreement with his or its attorney and represents that he or it understands and agrees to be bound by its terms.

# Schedule A

| Lease Address | Value |
|---|---|
| 320 Old Hook Road, Westwood, N.J. | $250,000 |
| 315 Old Hook Road, Westwood, N.J. | $250,000 |
| 3 No. Prospect Avenue, Bergenfield, N.J. | $150,000 |
| 786 River Road, Garfield, N.J. | $150,000 |
| 270 Route 46, West Denville, N.J. | $150,000 |
| 169 East Midland Avenue, Paramus, N.J. | $150,000 |
| 1405 Hamburg Turnpike, Wayne, N.J. | $150,000 |
| *9101 Kennedy Boulevard, North Bergen, N.J. | $1,250,000 |

*Title in fee

GERALD J. ORATIO, ESQ.
372 Kinderkamack Road
Westwood, NJ 07675
(201) 664-4733
Attorney for S.N.Walz, LLC

---

| | | |
|---|---|---|
| In the Matter of the General Assignment | : | SUPERIOR COURT OF NEW JERSEY |
| for the Benefit of Creditors of | | CHANCERY DIVISION:PROBATE PART |
| | : | HUDSON COUNTY |
| G & Y REALTY, LLC | | |
| | : | DOCKET No.: 308205 |
| Assignor | | |
| | : | |
| to | | NOTICE OF OBJECTION TO SALE, |
| | : | TRANSFER OR OTHER DISPOSITION OF |
| STEVEN MITNICK | | LEASE OR OTHER PERSONAL PROPERTY |
| | : | OF S.N. WALZ, LLC |
| Assignee | | |

---

(1.) I am the sole member of S.N. Walz, LLC a new Jersey Limited Liability Company:

(2.) S.N. Walz, LLC is the owner of certain real property commonly known and designated as 169 East Midland Avenue, Paramus, New Jersey 07652 together with the building and other personal property.

(3.) On said premises there is a building consisting of a small office and two bays for auto repair. In addition there are underground gasoline storage tanks. pumps (dispensers) and related equipment for the purpose of retail gasoline sales. **ALL SAID REAL AND PERSONAL PROPERTY IS OWNED BY S.N. WALZ, LLC AND NO ONE ELSE.**

1

(4.) On November 5, 2003 S.N. Walz, LLC entered into a particular Lease Agreement, hereinafter referred to as the "LEASE" with BOSGI, Inc., a New Jersey Corporation having offices located at #2 Broad Street, Room 510, Bloomfield, NJ 07003.  Said Lease is attached hereto, made a part hereof, and designated as Exhibit "A".

(5.) In a separate and distinct transaction on February 12, 2004 S.N. Walz, LLC entered into a separate Lease Agreement with Kevin Rudolph for the operation of an auto/truck repair facility utilizing the two bays of the realty and a portion of the office at the 169 East Midland Avenue, Paramus, New Jersey premises.  There is no connection "between" Kevin Rudolph and Bosgi, Inc. or G&Y Realty.

(6.) On September 3, 2013 S.N. Walz, LLC entered into an Assignment of Lease with G&Y Realty, Inc. a copy of said Assignment is attached hereto, made a part hereof, and marked Exhibit "B".  Said Assignment incorporated all of the terms and conditions of the underlying lease between S.N. Walz, LLC and Bosgi, Inc. dated November 5, 2003.

(7.) Exhibit "A" provides in pertinent part as follows:

(A.) Page 6 – "Whereas"

> Landlord **owns** certain real property located at 169
> East Midland Avenue, Paramus, New Jersey 07652,
> together with a building and other improvements
> including underground gasoline storage tanks,
> pumps and related equipment (hereinafter
> referred to as the "Premises") (Emphasis supplied).

(B.) Page 14 – Section 5.01 Use and Occupancy

> Tenant may use and occupy the demised Premises

2

for the retail sale of gasoline and related products, with a share of the office space, and for no other purpose.

(C.) Page 25 – Section 6.04 Assignment or Subletting by Tenant

Tenant shall not assign this Lease, nor sublet the whole or any portion of the demised premises or any interest therein, except as provided herein, for all or any portion of the term, without the prior written consent of the Landlord. Any assignment or sublease , modification of Tenant's corporate or proprietary structure or any other transfer of Tenant's interest in this Lease shall be permitted only upon satisfaction of the following conditions:

(b) Tenant shall reimburse Landlord for all reasonable costs which may be incurred in connection with any such assignment, sublease, or other transfer, including but not limited to, attorney's fees and consultants' fees;

(c) Tenant shall not market or advertise the space proposed to be sublet or assigned using materials or advertisements without the prior written consent of the Landlord to such materials or advertisements; and

(d) Landlord consents in writing to said assignment, or sublease, modification of Tenant's corporate or proprietary structure or any other transfer, except as provided herein. . . .

If, without Landlord's prior written consent, there shall be an attempted assignment, subletting or other transfer of Tenant's

3

for the retail sale of gasoline and related products, with a share of the office space, and for no other purpose.

(C.) Page 25 – Section 6.04 Assignment or Subletting by Tenant

Tenant shall not assign this Lease, nor sublet the whole or any portion of the demised premises or any interest therein, except as provided herein, for all or any portion of the term, without the prior written consent of the Landlord. Any assignment or sublease , modification of Tenant's corporate or proprietary structure or any other transfer of Tenant's interest in this Lease shall be permitted only upon satisfaction of the following conditions:

(b) Tenant shall reimburse Landlord for all reasonable costs which may be incurred in connection with any such assignment, sublease, or other transfer, including but not limited to, attorney's fees and consultants' fees;

(c) Tenant shall not market or advertise the space proposed to be sublet or assigned using materials or advertisements without the prior written consent of the Landlord to such materials or advertisements; and

(d) Landlord consents in writing to said assignment, or sublease, modification of Tenant's corporate or proprietary structure or any other transfer, except as provided herein. . . .

If, without Landlord's prior written consent, there shall be an attempted assignment, subletting or other transfer of Tenant's

3

interest, or if the demised premises shall be
occupied by any party other than Tenant,
whether as a result of an act or omission by
Tenant or by operation of law or otherwise,
Landlord may, in addition to, and not in
diminution of or substitution for any
other rights and remedies under this Lease
or pursuant to law, to which Landlord may be
entitled as a result thereof, collect rent from
the proposed assignee, subtenant or occupant
and apply the net amount collected to the rent
herein reserved, but no such assignment,
subletting, occupancy or collection shall be
deemed a waiver of this covenant or the
acceptance by the Landlord of the assignee,
subtenant or occupant as a Tenant, or release
of Tenant hereunder, from the further
performance by Tenant of the covenants
on the part of Tenant herein contained.

Consent, if any, by Landlord to any assignment
or subletting shall not constitute a waiver
of the necessity for such consent to any
subsequent assignment or subletting.

At Page 28 –

Any transfer of this Lease or subletting of all
or any part of the premises made without
the prior written consent of the Landlord
shall entitle Landlord to terminate this Lease
at any time after actual notice of such change
by giving Tenant at least thirty (30) days prior
written notice and on the date fixed in such
notice for termination of this Lease, this Lease
shall expire with the same effect as if said
date were originally set forth in this Lease for
expiration of the term.

4

**LANDLORD HEREBY TERMINATES THE LEASE DATED NOVEMBER 5, 2003 AND THE ASSIGNMENT DATED SEPTEMBER 3, 2013.**

(D.) Page 42 – 43 Article XI Default by Tenant

Section 11.01 Events of Default.  The occurrence of any of the following shall constitute an event of default:

(c) Either (i) the appointment of a trustee, custodian, conservator, liquidator or receiver to take possession of all or substantially all of the assets of "Tenant", or (ii) a general assignment by Tenant for the benefit of creditors, or (iii) any action taken or suffered by Tenant under any insolvency or bankruptcy act, shall constitute a default of this Lease by Tenant, and Landlord may terminate this Lease forthwith and upon notice of such termination.  Tenant's right to possession of the demises premises shall cease, and Tenant shall then quit and surrender the demised premises to Landlord, but Tenant shall remain liable as hereinafter  provided.

8.  G & Y Realty, LLC has failed and refused to pay the required rent pursuant to the underlying Lease and Assignment of Lease.

In addition to the foregoing G & Y Realty LLC has violated all of the provisions summarized in paragraph 7 hereof as same are enumerated, included, but not limite to the obligations set forth in Exhibits A & B attached hereto and made a part hereof.

9.  S.N. Walz, LLC objects to any forced lease by sale or otherwise which it has not specifically authorized and/or to which it has not affixed its consent.

5

10.  S.N. Walz, LLC respectfully requests that its ownership of its property both real and

personal be excised, omitted and released from any and all action attempted by the Assignor,

G & Y Realty, LLC, and Assignee, Steven Mitnick,  to force upon it any tenancy whatsoever.

I hereby certify that the foregoing statements made by me are true.  I am aware that if I

make willfully false statements I may be subject to punishment.

S.N. Walz, LLC

Dated: March 10th, 2014          BY:  _____

Stephen Walz, Sole Member

6

**EXHIBIT "A" CONSISTS OF A CD AND IS NOT BEING INCLUDED HEREIN**

**EXHIBIT "B"**

## ASSIGNMENT OF LEASE

This Assignment of Lease is entered into by and between Bosgi, Inc., /Boris Khinkis – the "assignor" with an address of 2 Broad Street, Room 510, Bloomfield, New Jersey 07003 ("Asignor"), and G&Y Realty, LLC, 9101 Kennedy Blvd., North Bergen, NJ ("Assignee").

Background

By a certain Lease dated November 5, 2003, (the "Lease") S.N. Walz, LLC., ("Landlord") leased to Bosgi, Inc.,/Boris Khinkis as tenant the premises described as follows:

The Full Service Gasoline Station located at 169 East Midland Avenue, Paramus, New Jersey 07652 (the "Premises"); and

Bosgi, Inc.,/Boris Khinkis, Assignor desires to assign to G&Y Realty, LLC, Assignee, and Assignee desires to assume, all of Assignor's rights and obligations as tenant under the Lease, with the consent of Landlord.

Therefore, in consideration of the mutual covenants contained herein and other valuable consideration received, and with the intent to be legally bound, the parties agree as follows:

1. Assignor hereby assigns the Lease and all of its right, title and interest thereunder to Assignee. Assignee hereby accepts such assignment. Assignee shall have all of the rights of Assignor under the Lease including, without limitation, any option to renew or extend the Lease, option to purchase the Premises and right to the security deposit now held by Landlord, should any of the foregoing exist. The Original Lease Agreement is attached hereto and made a part hereof as if set forth at length.

2. Assignee hereby assumes and agrees to be bound by all of Assignor's obligations under the Lease. Assignee shall perform all the terms, covenants and conditions of the Lease, including the payment of rent and any other required amounts to Landlord on and after the date hereof pursuant to its terms.

3. Assignee shall indemnify and hold Assignor harmless from any and all claims, damages, expenses and liabilities of whatever nature, including attorney's fees, arising under the Lease or relating to the Premises after the date hereof.

1

4. This Assignment shall not operate as a waiver or release of any obligation or liability of the Assignor, Bosgi, Inc./Boris Khinkis during the term of the Assignor's possession and operations upon the leased premises prior to the date hereof.

5. This Lease Assignment is conditioned upon the following:

(A.) The Assignee shall provide proof of Public Liability Insurance in the amounts set forth in the Lease Agreement naming the Landlord as an additional insured.

(B.) The Assignee shall provide proof of Environmental Insurance naming the Landlord as an additional insured.

(C.) The rent for September shall be due on the 1st of the month.

(D.) The Assignee acknowledges that it is responsible and obligated for the maintenance and repair of the gasoline dispensers and related equipment including but not limited to the present condition of the dispensers, pans etc. on the east Midland Avenue side of the property. Additionally, the Assignee acknowledges that the island and dispenser on the Farview Avenue side of the premises is presently being re-installed. Once that dispenser is placed in operation the dispenser and related equipment shall be the responsibility and obligation of the Assignee.

(E.) The Assignee acknowledges that it has made a full and complete inspection of that portion of the premises to which the Lease Agreement refers and accepts same "as is and where is"; and that the Assignee does not have exclusive use of the entire premises given that an additional tenant operates an auto repair business thereon.

6. Except as specifically modified herein, the Lease will continue in full force and effect.

7. This Assignment shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legal representatives, successors and assigns.


CONSENT OF LANDLORD


Landlord hereby consents to the above Assignment and releases Assignor from all obligations

2

and liabilities arising under the Lease after the date hereof.

IN WITNESS WHEREOF, this Assignment of Lease is executed under seal on the ___3rd___ day of

_September_ , 2013.

Accepted and Agreed:

S.N. Walz, LLC

BY: _____
~~Steven~~ STEPHEN Walz, Managing Member
Landlord

Bosqi Inc.

BY: _____
Boris Khinkis, President and Secretary
Assignor

G&Y Realty, LLC

BY: _____
Guy Madmon, Managing Member
Assignee

3

# EXHIBIT "I"



**G&Y Realty, LLC; Case No. 14-16010**
**Timothy Neumann**  to: smitnick, bwisotsky                     03/28/2014 03:59 PM
Cc: goratiolaw, jscura, baris.alkoc, denise.atlas, "'Smith, Christine R.'"

| | |
|---|---|
| From: | "Timothy Neumann" <timothy.neumann25@gmail.com> |
| To: | <smitnick@mmpclawfirm.com>, <bwisotsky@nmmlaw.com>, |
| Cc: | <goratiolaw@aol.com>, <jscura@scuramealey.com>, <baris.alkoc@singinoil.com>, <denise.atlas@live.com>, "'Smith, Christine R.'" <CSMITH@winnebanta.com> |

| | |
|---|---|
| History: | This message has been forwarded. |

1 attachment



3282014 NOTICE OF BK FILING.pdf

Please be advised that an involuntary bankruptcy petition has been filed
against G&Y realty, LLC. Please be guided accordingly.

Very truly yours,

Timothy P. Neumann
Broege, Neumann, Fischer & Shaver, LLC
25 Abe Voorhees Drive
Manasquan, NJ 08736
Phone: (732) 223 - 8484;  ext. 2
Fax: (732) 223-2416
timothy.neumann25@gmail.com

The information contained in this e-mail message is intended only for the
personal and confidential use of the recipient(s) named above.  This message
may be an attorney-client communication and as such is privileged and
confidential.  If the reader of this message is not the intended recipient
or an agent responsible for delivering it to the intended recipient, you are
hereby, notified that you have received this document in error and that any
review, dissemination, distribution, or copying of this message is strictly
prohibited.  If you have received this communication in error, please notify
us immediately by e-mail, and delete the original message. Any tax
information or written tax advice contained herein (including any
attachments) is not intended to be and cannot be used by any taxpayer for
the purpose of avoiding tax penalties that may be imposed on the taxpayer.
(The previous sentence has been affixed pursuant to U.S. Treasury
Regulations governing tax practice.) Title 11 of the United States Code,
Section 528 requires the following statement:  " I am a debt relief agency.
I help people file for bankruptcy relief under the Bankruptcy Code."

US Bankruptcy Court NJ - Live Database                    https://ecf.njb.uscourts.gov/cgi-bin/NoticeOfFiling.pl?907691

United States Bankruptcy Court
District of New Jersey

# Notice of Involuntary Bankruptcy Case Filing



An involuntary bankruptcy case concerning the debtor(s) listed below was filed under
Chapter 11 of the United States Bankruptcy Code, entered on 03/28/2014 at 3:50 PM
and filed on 03/28/2014.

**G & Y REALTY, LLC**
9101 KENNEDY BLVD
NORTH BERGEN, NJ 07047
Tax ID / EIN: 26-3994671

The case was filed by the following petitioning creditor(s):

**SABIR, INC.**
P O BOX 300
LONG BRANCH, NJ 07740

**S. N. WALZ, llc**
169 EAST MIDLAND AVE
PARAMUS, NJ 07652

**SAMIA VENTO llc**
15 SUNRISE DRIVE
WAYNE, NJ 07470

The case was assigned case number 14-16010.

If you would like to view the bankruptcy petition and other documents filed by the petitioning creditor(s) and the
debtor, they are available at our *Internet* home page http://ecf.njb.uscourts.gov or at the Clerk's Office, MLK Jr
Federal Building, 50 Walnut Street, Newark, NJ 07102.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth
important deadlines.

**James J. Waldron
Clerk, U.S. Bankruptcy
Court**

**PACER Service Center**