UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Bruce J. Wisotsky**
**NORRIS, McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206 North
Bridgewater, New Jersey 08807
(908) 722-0700; (908) 722-0755 (fax)
Attorneys for Steven Mitnick, Assignee for the
Benefit of Creditors of G&Y Realty, LLC

**In Re:**

**G&Y REALTY, LLC,**

                **Debtor.**

Honorable Rosemary Gambardella

Chapter 11

Case No. 14-16010(RG)

Hearing Date:

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER (A) DISMISSING INVOLUNTARY BANKRUPTCY PETITION PURSUANT TO 11 U.S.C. §§ 305 AND 707 AND (B) IMPOSING SANCTIONS PURSUANT TO 11 U.S.C. § 303(i)**

On the Brief:

Bruce J. Wisotsky, Esq.
Larry K. Lesnik, Esq.

## **PRELIMINARY STATEMENT**

Steven Mitnick, Assignee for the Benefit of Creditors of G & Y Realty LLC ( "Mitnick or the "Assignee"), seeks the entry of an order pursuant to §§ 305 and 707(a) of title 11 of the United States Code (the "Bankruptcy Code") dismissing the involuntary chapter 11 petition filed against G & Y Realty, LLC (the "Assignor") by Sabir, Inc. ("Sabir"), SN Walz, LLC, and Samio Vento, LLC (collectively the "Petitioning Creditors") on March 28, 2014 and, pursuant to §303(i) of the Bankruptcy Code, imposing sanctions in the form of an award of compensatory and punitive damages against the Petitioning Creditors.

The filing of an "involuntary petition is an extreme remedy with serious consequences." In re Apollo Health Street, Inc., No. 11-22970, 2011 WL 1884182 at *5 (Bankr. D.NJ May 18, 2011). As will be demonstrated herein, the filing of the involuntary chapter 11 petition against the Assignor is nothing more than a "bad faith" attempt by the Petitioning Creditors, in particular Sabir, to frustrate the Assignee's ongoing administration of the Assignor's assignment estate, including his successful efforts to void a substantial transfer to Sabir, and to shield itself from significant exposure with respect to the return of potential preferential transfers made by the Assignor thereto. It is telling to note that the within petition was filed at 3:50 p.m. on March 28, 2014, literally 10 minutes before a scheduled hearing in Hudson County with respect to the Assignee's sale of substantially all of the Assignor's non-litigation assets, resulting in the inability of the Assignee to move forward with the sale.

Allowing the putative Debtor to remain in a chapter 11 proceeding will unwind the enormous progress made by Mitnick in the assignment proceedings over the past two months. It will also cause additional and unnecessary administrative costs which, coupled with a reduced ability to seek the recovery of preferential transfers to Sabir, will diminish the chances of a

meaningful recovery for unsecured creditors of the Debtor.

As detailed in Mitnick's supporting Certification, one does not have to take a particularly in depth look at Sabir's motivation in filing the subject involuntary chapter 11 petition to confirm its intent to seek to avoid the impact of an adverse Superior Court ruling and to drastically minimize, if not eliminate, its exposure with respect to claims to avoid other transfers thereto by both resetting and reducing the applicable "look-back" period. As this Court is aware, the Assignee can recover preferential transfers made by the Assignor to Sabir during the 120 day period prior to January 27, 2014. *See* N.J.S.A 2A:19-3. During that period, transfers made by the Assignor to Sabir totaled over $18,000,000. By contrast, Sabir's preference exposure in this case would be restricted to the 90 day period prior to March 28, 2014. *See* 11 U.S.C. Section 547, during which no known transfers of the Assignor's assets were made to Sabir. Accordingly, permitting the Assignor to remain in a chapter 11 proceeding would cause substantial harm to creditors, other than Sabir, whose prospects for a distribution on their claims would be significantly reduced given the potential elimination of preference claims against Sabir.

Under the totality of the circumstances herein, the involuntary petition must be dismissed as a bad faith filing.

## **FACTUAL BACKGROUND**

As detailed in Mitnick's supporting Certification, the Assignor previously operated gasoline service stations under the "Delta" brand at various leased locations throughout northern New Jersey. On January 15, 2014, the Assignor conveyed its most valuable stations to Sabir in consideration of Sabir's agreement to forbear from collecting on an antecedent indebtedness. Less than two weeks later, on January 27, 2014, the Assignor conveyed to Mitnick a Deed of Assignment for the Benefit of Creditors, which was thereafter duly recorded with the Register of

Hudson County and filed with the Surrogate thereof.

During the period from January 27, 2014 through March 28, 2014, Mitnick, as Assignee, was actively involved in the administration of the Assignor's estate. Without limitation, he retained various professionals to assist him in his duties, with Mitnick and such professionals thereafter spending hundreds of hours in an effort to maximize the value of the Assignor's assets and to locate purchasers for same.

Mitnick's ability to maximize the value of assets of the assignment estate had been compromised by Assignor's transfer of its most valuable stations to Sabir shortly prior to the conveyance of the Deed of Assignment. Sabir has operated such gas stations from and after January 15, 2014, and has retained all revenues generated from such operations, notwithstanding its failure to pay the Assignor any cash consideration for the transfer of control of such service stations or even to provide Mitnick with an accounting of its receipts and disbursements during such time period. Accordingly, Mitnick instituted an action in the Superior Court against Sabir to void the transfer and obtain an accounting, resulting in the entry of a bench order by the Honorable Lourdes Santiago avoiding the transfer.

Concurrent with the institution of the avoidance action, Mitnick, with the assistance of his retained auctioneer (Auction Advisors, Inc.), extensively marketed the the Assignor's leases for eighteen (18) service stations and related assets, resulting in bids for those assets totaling in excess of $1,300,000. Details regarding such bids are attached to Mitnick's Certification. On March 20, 2014, when the Superior Court entered a bench order voiding the transfer of the aforesaid eight (8) stations from the Assignor to Sabir, at Mitnick's request, it adjourned the hearing with respect to the Assignee's proposed sale of the Assignor's assets, which had also been scheduled to be heard on that date, until March 28, 2014 at 4:00 p.m. During the

intervening week, the Assignor, his staff and retained professionals spent numerous hours attempting to resolve objections that had been filed to the Assignor's sale motion by various landlords and to keep the bidders for such assets interested in acquiring same. Those efforts were highly successful, resulting in a resolution of many of the objections.

While Mitnick, his staff an professionals were earnestly taking the steps necessary to maximize the value of the Assignor's assets for the direct benefit of all creditors, Sabir sat idly by until literally the very last minute, and then directed its counsel to file an involuntary chapter 11 petition against the Assignor. Despite the fact that Mitnick had been engaged in efforts to resolve issues with Sabir and the other Petitioning Creditors during the week preceding the March 28th Superior Court hearing, no prior notice of an intent to commence this case was communicated to Mitnick, who appeared at the March 28 hearing hearing, prepared to seek approval of sales.

While Sabir's motivations with respect to the filing of the involuntary petition against the Assignor are readily apparent, it is equally apparent that Sabir's action runs contrary to the best interests of the Assignor's creditors. If this case is dismissed, Mitnick will likely pursue his claim against Sabir for the return of substantial preferential payments received thereby. If this case proceeds, Sabir's exposure with respect to such transfers will be markedly reduced if not eliminated as a result of the shorter "look-back" period under the Bankruptcy Code and the considerably later date of the involuntary filing compared to the date of conveyance of the Deed of Assignment.

Accordingly, the Assignee believes that the involuntary chapter 11 proceeding orchestrated by Sabir was filed in bad faith and would be extremely prejudicial to the interest of the Assignor and its creditors.

## LEGAL ARGUMENT

### I. THE INVOLUNTARY CHAPTER 11 PETITION SHOULD BE DISMISSED PURSUANT TO 11 U.S.C. § 305

Section 305(a) of the Bankruptcy Code, which governs abstention and dismissal, provides that:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension; ...

As suggested by such language, the test to be applied under § 305(a) is not whether dismissal would prejudice a debtor or even whether a balancing process favors dismissal, but whether the debtor and all creditors would be "better served" outside of bankruptcy. Eastman v. Eastman, 188 B.R. 621, 624-25 (B.A.P. 9th Cir. 1995). Courts considering a request for dismissal or abstention under this section generally utilize one of two approaches, with the first approach focusing on the existence of three specific conditions and the second approach being more akin to a "totality of circumstances" standard which includes an analysis of as many as seven factors. Regardless of the approach utilized by this Court, dismissal of the within proceeding is fully warranted.

The aforesaid three-part test for abstention looks for the following factors:

(1) Whether the petition is filed by a few recalcitrant creditors and most creditors oppose the bankruptcy;

(2) Whether there is a state insolvency proceeding or an out-of-court arrangement pending; and

(3) whether the dismissal is in the best interests of the debtor and all creditors.

See, e.g. In re Short Hills Caterers, Inc., 2008 Bankr. LEXIS 1726 at *11 (Bankr. D. NJ June 4, 2008), GMAM Investment Funds Trust I v. Globo Conunicacoes E Participacoes S.A.,

6

1230274-1

317 B.R. 235, 254 (S.D. NY 2004) and In re Sherwood Enters., Inc., 112 B.R. 165, 167-68 (Bankr. S.D. Tex. 1989).

In the instant matter, not only was this case commenced by only a few disgruntled creditors, it was almost certainly fully orchestrated by the one creditor who stands to gain personally by changing the parameters of the preference "look-back" periods with respect to the Debtor and who is seeking to circumvent Judge Santiago's adverse bench ruling. The other two Petitioning Creditors assert rent claims against the Assignor and were among those parties who objected to assignment of their leases in the course of the Assignee's sale motion in the assignment proceeding. It is no coincidence that the gas stations located on their leased properties are currently being operated by Sabir. Accordingly, these two creditors also have their own personal agenda with respect to the Assignor's assets and presumably hope to prevent the sale/assignment of their leases through their participation in the involuntary chapter 11 filing orchestrated by Sabir, it which case they will reap the benefit of the proceeds of sale of the respective leasehold interests. It is telling to note that the Petition itself was filed by Timothy P. Neumann, Esq., Sabir's counsel, leaving no question as to where his allegiances lie.

The second prong of the aforesaid three-part test is obviously satisfied by the existence of the assignment proceeding in Hudson County which had been pending for two full months prior to the filing of the involuntary petition. Thus, a pending state court insolvency proceeding pre-existed the commencement of the within bankruptcy case.

Similarly, there can be little question that dismissal of the involuntary filing is in the best interests of the Alleged Debtor and its creditors, with the obvious exception of the Petitioning Creditors. The Assignee was on the verge of obtaining approval to sell a significant portion of the Assignor's assets for the benefit of creditors as a whole, and had already successfully

litigated against Sabir to avoid the January, 2014 transfer of eight (8) service stations from the Assignor to Sabir. In fact, not only will the distribution to unsecured creditors be diminished as a result of Sabir's reduced/eliminated preference exposure in a bankruptcy case, it is possible that some of the proposed purchasers of the subject service stations will find the delays incurred as a result of such filing to be intolerable, resulting in the withdrawal of their offers for such assets. The Court should note that the Debtor has twenty (20) days within which to respond to the March 28, 2014 filing of the involuntary petition, and that thereafter, whether as a debtor in possession, or through the auspices of a chapter 11 trustee, the seller of the estate assets will be back to square one with respect to negotiating with potential purchasers of such assets and moving for requisite court approval of sales.

Thus, the direct financial interests of the Assignor's creditors will clearly be adversely affected if the involuntary petition is not promptly dismissed. *See* In re Nina Merchandise Corp., 5 B.R. 743, 747 (Bankr. S.D. NY 1980), in which the court noted that "it is evident that §305 contemplates the instance where a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process." That is exactly the situation present here.

The aforementioned second approach, which is akin to a "totality of circumstances" standard, includes consideration of the following factors: (1) economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or if there is already a pending proceeding in a state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving the equitable distribution of assets; (5) whether the debtor and the creditors were able to work out a less expensive, out-of-court arrangement, which better serves all interests in the

8

1230274-1

case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. *See* Short Hills Caterers, supra. at *12-13, In re Nader Homes, Inc., No. 11-22760, 2011 WL 2267735 at *4 (Bankr. D NJ June 6, 2011), In re Trina Assoc., 128 B.R. 858, 867 (Bankr. E.D. NY 1991) and In re R&A Bus Assoc. Inc., 1999 Bankr. LEXIS 543 (Bankr. E.D. PA 1999).

The specific factors to be considered as well as the weight to be given to each such factor is highly sensitive to the facts of each individual case and require the proper application of the operative facts to the aforesaid potential factors on a situation by situation basis. In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa 1996).

Mitnick submits that each and every one of these factors supports his request for dismissal of the involuntary Petition herein based on the following analysis:

1.  The Assignee, his staff and professionals have expended enormous time and effort in the assignment proceeding which would essentially all be for naught if Mitnick's Motion is not granted. In light of the time already spent by the Assignee in administering the within estate, seeking purchasers for the estate assets, seeking court approval of sales thereof as well as successfully prosecuting his claim to set aside the transfer of key service stations from the Assignor to Sabir, it would clearly be uneconomical or inefficient, if not an improper use of the time and resources of the Bankruptcy Court, to allow the involuntary proceeding to continue. Indeed, a trustee, if one is appointed, would only duplicate many of the services rendered by the Assignee at an additional administrative expense to the estate, to the great financial detriment of its creditors. Moreover, the creditors themselves, who previously had been provided with notice of the execution of a Deed of Assignment and proof of claim forms to be filed would now be

9

1230274-1

required to expend additional time and funds to conform to the Bankruptcy Code requirements, and may even be confused by what would appear to the untrained eye to be a duplicative notice from the Bankruptcy Court.

2. The Superior Court of New Jersey, which already has substantial knowledge and understanding of the issues in the case, is well suited to protect the interests of the Assignee and its creditors. In addition, creditors have received notice of the proceeding and the Assignor's proposed sale of estate assets. They were provided with an opportunity to be heard with respect to the sale and many of them availed themselves of the opportunity by retaining counsel who appeared at proceedings before the Superior Court.

3. Involvement of this Court is unnecessary to accomplish a just and equitable liquidation of the Assignor's assets, which process has nearly been completed as to non-litigation assets in the Superior Court. Furthermore, because of the aforementioned timing issues relating to potential preference recoveries, the interests of creditors will obviously be better protected should the assignment proceeding continue.

4. There is clearly an alternative means of achieving an equitable distribution of the estate assets through the continuation of the assignment proceeding in the Superior Court. In fact, a transfer of the administration of the liquidation of the Assignor's assets to this Court will interfere with such efforts, rather than improve or expedite same. As indicated, the Assignee was on the verge of obtaining approval to sell all of the Assignor's non-litigation assets for substantial amounts, which would have thereafter lead to an equitable distribution of such proceeds to the creditors thereof. Such efforts are now being threatened by the conduct of the Petitioning Creditors.

1230274-1

5.  Mitnick was well on his way to accomplishing sales which would result in substantial proceeds to the assignment estate and which would best serve the interests of creditors. Allowing the administration of the assignment estate to continue will certainly be a less expensive arrangement than administering the chapter 11 proceeding, which will require the engagement of new professionals, likely including a chapter 11 trustee, his counsel and other professionals, in order to engage in duplicative efforts liquidate the estate assets.

6.  The Assignee in the assignment case, a non-federal insolvency proceeding two months old at the time of the filing of the involuntary petition herein, was actually in the process of resolving disputes with respect to the Assignee's proposed sale of estate assets. It would certainly be more costly and time consuming to start anew under the Bankruptcy Code. The involuntary petition was filed on the eve of a hearing with respect to the Assignee's motion to sell such assets, with an adjudication of any disputed issues expected to be made at that time. Conversely, allowing a chapter 11 case to proceed at this point would push that process back by several months or more, during which the estate may be subject to hundreds of thousands of dollars in expense accruals, while assets are being liquidated.

7.  Perhaps the most compelling of the seven factors is the purpose for which bankruptcy jurisdiction has been sought by the Petitioning Creditors, especially Sabir. Sabir was not motivated by a concern that the Assignee was acting inappropriately in the assignment case (as to which other remedies would have been available) or that the creditor body at large was being prejudiced by the actions of the Assignee. Rather, Sabir was motivated by two very specific and personal desires (a) to prevent implementation of Judge Santiago's bench order and (b) to limit its preference exposure as outlined herein. The personal agenda of an individual creditor must give way to the collective best interests of the creditor body.

11

1230274-1

## II. THE INVOLUNTARY CHAPTER 11 PETITION SHOULD BE DISMISSED PURSUANT TO 11 U.S.C. § 707

Section 707 of the Bankruptcy Code authorizes a court, after "notice and a hearing," to dismiss petitions for "cause" 11 U.S.C. § 707(a). Section 707 sets forth a non-exhaustive list of factors for a court to consider when making a determination as to whether cause exists for dismissing a bankruptcy case, as it is within the court's discretion in making such determination. In re Aupperle, 352, B.R. 43 (Bankr. D. NJ 2005) and In re Riply & Hill, P.A., 176 B.R. 596, 598 (Bankr. M.D. Fl 1994). Section 707(a) applies to both voluntary and involuntary filings. See In re MacFarlane Webster Associates, 121 B.R. 694, 696 (Bankr. S.D. NY 1990): "The wording of the statute indicates that it covers both voluntary and involuntary cases." Furthermore, the filing of a petition in bad faith, as is the case herein, in and of itself can be cause for dismissal under § 707(a). In re Mottilla, 306 B.R. 782, 788 (Bankr. M.D. Pa 2004).

In determining whether bad faith exists, courts must look at each proceeding on a case-by-case basis. In re Sky Group Int'l, Inc., 108 B.R. 86, 90 (Bankr. W.D. Pa 1989). In the case of In re Elsub Corp., 66 B.R. 189, 193 (Bankr. D. NJ 1986), this Court stated that the existence of bad faith is determined by an examination of the totality of the factors at issue and went on to note:

> whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to insure the petition as filed was proper, and whether petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders. The bankruptcy court, in examining the conduct of the petitioning creditor, must consider whether a reasonable person in a position of the petitioning creditor, would have initiated the bankruptcy process. The Bankruptcy Court must also ascertain the subjective motivations of a petitioning creditor which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary proceedings.

In analyzing under the objective standard, the bad faith of Sabir and the other Petitioning Creditors in filing the involuntary petition against the Assignor is readily apparent.

This Court has held that filing an involuntary petition as a litigation tactic, as here, demonstrates bad faith. Skyward Ventures, supra. at 579 and In Re Silverman, 230 B.R. 46, 53 (Bankr. D. NJ 1998): "Filing an involuntary petition with the intent to gain a strategic advantage, rather than to protect one's interest relative to other creditors or to prevent dissipation of assets, constitutes an improper purpose."

There can be little doubt that the involuntary petition herein was filed in bad faith. The petition was filed as an "end run" seeking to avoid Judge Santiago's adverse bench ruling and to reduce the potentially massive (but still undetermined because of Sabir's refusal to provide required documentation) in an assignment proceeding, as compared to its limited or non-exposure in a bankruptcy case.

Equally compelling is the timing of the filing of the involuntary petition. Rather than seek to have the Assignor's assets liquidated in a bankruptcy court either before or shortly after its execution of a Deed of Assignment to Mitnick, Sabir sat by for months during which period Mitnick expended substantial efforts to effectuate assets sales. Sabir was obviously in no rush to initiate an involuntary filing against the Assignor, since the passing of each day reduced its preference exposure. It was only when Judge Santiago issued her bench ruling and was on the verge of approving the Assignor's sale motion that Sabir determined it could (or should) wait no longer and thus, along with its requisite two other Petitioning Creditors, initiated this case.

Common sense and applicable law dictate that Sabir did not initiate the filing of the involuntary Petition for any altruistic purpose, nor did it take into account the interests of other creditors. Instead, Sabir sought only to improve its own economic position, by attempting to

13

1230274-1

avoid an adverse ruling and by reducing its preference exposure. The filing of the involuntary Petition herein is nothing more than blatant forum shopping intended to avoid the realities which Sabir and its accomplices faced in the assignment proceeding. Thus, it is not surprising that the only parties who would benefit from the continuation of the involuntary proceeding would be the Petitioning Creditors themselves, in particular, Sabir.

Fortunately for other parties in interest, such strategic filing runs afoul of the Bankruptcy Code and applicable case law, preventing Sabir and its cohorts from taking succeeding in an action that would be to their benefit at the direct expense of all other creditors of the Assignor. Moreover, the filing of an involuntary petition makes no practical sense in light of the ongoing substantial and beneficial efforts of the Assignee in the assignment case. That is why "courts generally dismiss an involuntary case under § 305(a)(1) where the debtor has made an assignment for the benefit of creditors." In re Cincinnati Gear Co., 304 B.R. 784, 785-86 (Bankr. S.D. Oh 2003). Any cogent analysis of the "totality of circumstances" that existed at the time that the Petitioning Creditors filed their involuntary Petition against the Assignor necessarily confirms that a reasonable person, acting in the interests of all creditors, would not have filed such Petition and that same was clearly filed in bad faith, requiring the dismissal of the case.

### III. THE ASSIGNEE IS ENTITLED TO AN AWARD OF COMPENSATORY AND PUNATIVE DAMAGES AGAINST PETITIONING CREDITORS AS SANCTIONS FOR THE INVOLUNTARY PETITION FILING

Pursuant to § 303(i) of the Bankruptcy Code, if the involuntary Petition is dismissed pursuant to either § 305(a)(1) or § 707(a) in the Bankruptcy Code, the Court may, and in this situation should, award compensatory damages, including reasonable costs and attorneys' fees, and punitive damages, against the Petitioning Creditors. Section 303(i)(1) authorizes the

requested recovery of attorneys' fees and costs incurred in defending the involuntary petition filed by the Petitioning Creditors while §303(i)(2) authorizes the court to grant compensatory and punitive damages against the parties who filed a petition in bad faith.

While imposition of fees and costs is discretionary, the majority rule typically awards fees and costs upon dismissal. In re Silverman, 230 B.R. 46 (Bankr. D. NJ 1998). It is not even necessary for the court to make a finding of bad faith in order to impose such costs and fees. In re Landmark Distributors, Inc., 189 B.R. 290, 306 (Bankr. D. NJ 1995). Thus, should the Court grant the Motion, the Assignee is entitled to and should be awarded reasonable costs and expenses including attorneys' fees in an amount to be determined by the Court.

In the instant matter, the Assignee believes that the imposition of sanctions/punitive damages is warranted as a result of the bad faith exhibited by Petitioning Creditors. Bankruptcy law is designed to serve as a collective debt collection device for the benefit of creditors as a group, Skyworks Ventures, supra. at 577, but here Sabir and its cohorts exhibited no concerns for the interests of the non-petitioning creditors and put their own narrow interests first, second and last. Sabir did not seek to have the Debtor's assets liquidated in the Bankruptcy Court for a legitimate purpose, but only as a means of reducing its preference exposure and to avoid the impact of a court order in hopes that another court might rule differently. Such bad faith conduct must be punished.

It is clear that the Petition was filed with improper motives, which conduct has jeopardized the ability of creditors to receive distributions through the liquidation of the assignment estate's assets. Through such involuntary filing, Sabir sought to abuse the legal process for its own means rather than for a legitimate purpose of assuring equal treatment to similarly situated creditors (which was already underway in the assignment proceeding). As

indicated, Sabir was in no rush to file such involuntary petition, as the passing of each day reduced its preference exposure, and thus waited until the last possible moment to attempt to throw a monkey wrench into the Assignee's efforts to discharge its statutory duties. Such improper involuntary filing has already caused delays and thus harm to the assignment estate and the Assignor's creditors.

The Petitioning Creditors have abused the bankruptcy process by filing an involuntary petition that serves no practical or beneficial purpose to any party other than the Petitioning Creditors. Such conduct is evidence of their bad faith, under any test, and the Court should not excuse their actions herein. Rather, such actions should be duly punished through the imposition of punitive damages in order to deter such misconduct by other parties in the future.

## CONCLUSION

For all the reasons set forth at length herein, Steven Mitnick, Assignee for the Benefit of Creditors of G&Y Realty, LLC, respectfully requests the entry of an order dismissing the within proceeding and imposing sanctions, including compensatory and punitive damages against the Petitioning Creditors.

NORRIS, McLAUGHLIN & MARCUS, P.A.<br>
Attorneys for Steven Mitnick, Assignee

Dated: April 3, 2014            /s/ Bruce J. Wisotsky
                                    Bruce J. Wisotsky